## Mahoney v. Whyte et al.

1. *Rewards—Pursuit of Criminals.*—When officers of the law, stimulated by a reward offered for the apprehension of a criminal, pursue such criminal from place to place, and finally locate him, and employ a local officer to make the arrest, such local officer is not entitled to the entire reward, on the ground that he made the actual seizure of the criminal.

2. *Misrepresentations.*—The fact that officers who had been in the pursuit of a criminal for whom a reward was offered, falsely stated to a local officer, whom they employed to arrest the criminal, the crime for which he was to be arrested, and did not tell his true name, is no reason why the local officer making the arrest should be entitled to share in the reward.

3. *Falsehood and Deceit—Moral and Legal Wrongs.*—Falsehood and deceit are always subject to moral condemnation, but it is not appointed to human tribunals to sit in judgment upon mere moral delinquencies or abstract wrongs, affecting only the conscience; such tribunals take cognizance of delinquencies and wrongs, only when another has been induced by them to do some act to his own injury. Deceit and fraud, if not acted upon, or not accompanied by injury, are moral, not legal, wrongs.

**Memorandum.**—Bill of interpleader filed by the County of Jersey to require different claimants for a reward for the arrest of a criminal, to litigate their respective claims. Appeal by the defeated claimant, from the decree, entered by the Circuit Court of Jersey County; the Hon. George W. Herdman, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed March 6, 1893.

The opinion of the court states the case.

Appellant's Brief, Thos. F. Ferns, Attorney for Patrick Mahoney.

Where one gives such information to an officer as enables the latter to capture a fugitive from justice, even if he go with the officer and act as one of his posse, he does not thereby become entitled to recover a reward offered by the county for the capture and delivery of the criminal to the county jail. County of Juniata v. McDonald, 122 Pa. St. 115; S. C., 15 Atl. Rep. 696; Adair v. Cooper, 25 Tex. 548; Clan-

ton v. Young, 11 Rich. (S. C. Law R.) 546; Shuey v. United
States, 92 U. S. 73; Everman v. Hyman, 28 N. E. Rep. 1022.

Nor is the informant in an action entitled to recover the
reward, or any part of it, from the person making the arrest
and delivery of the person wanted. Fallick v. Barber, 1
M. & S. 108.

The law makes a distinction between officers having the
warrant to execute, and those making an arrest without the
warrant, as to recovering a reward for such arrest. Smith
v. Whildin, 10 Pa. St. 39; 49 Am. D. 572; Davis v. Munson,
43 Vt. 676; 5 Am. R. 315.

APPELLEES' BRIEF, J. S. CARR, ATTORNEY.

Where persons acting with a view of earning a reward
offered for the apprehension of an individual charged with
a crime, acquire a knowledge of facts necessary to effect such
apprehension, and the conviction of the accused, and under
such circumstances as the evidence in this case clearly dis-
closes, procure the assistance of another to make the actual
seizure of the accused as their agent or employe, and impart
to such employe or agent all the information necessary to
effect such apprehension, such persons are entitled to the
reward when earned. First Nat. Bank v. Hart, 55 Ill. 62,
70.

When one employs another to pursue or arrest an individ-
ual accused of crime, and for whose apprehension a reward
is offered, such employer is entitled to such reward if thus
earned. The County of Montgomery v. Robinson, 85 Ill.
174; C. & A. R. R. v. Sebring, 16 Ill. App. 184.

OPINION OF THE COURT, BOGGS, J.

The appellant and the appellees were rival claimants to a
reward of $500, offered by the county of Jersey for the
arrest and delivery to the sheriff of that county of one S. A.
Shaw, who stood charged with the crime of murder.

The appellee Whyte, a resident of Jersey County, having
information that Shaw, under the assumed name of McRey-
nold, was in the employ of the appellee Johnson, at Ash

Hill, Mo., went there to arrest him for the purpose of securing the reward, but Shaw had absconded before his arrival.

He advised Johnson of the identity of Shaw and of the offered reward, and they entered into an agreement to search for the accused and if successful to share the reward between them.

They interested with them one Leach, from whom they learned that Shaw had assumed the name of A. J. Perry, and was working in a box factory near Cairo. Whyte, Johnson and Leach went to Cairo and called at the police headquarters to procure an officer to make the arrest. There they first met the appellee, Mahoney, who was the city marshal of Cairo. They told him they desired to have one A. J. Perry, who was at the box factory, arrested upon a charge that he had committed a rape in East St. Louis.

Mahoney agreed to send, and did send an officer to the box factory to make the arrest, but Shaw was not. to be found. The appellees continued to prosecute their search, and soon after, through Leach, learned that Shaw would return to Cairo about six o'clock on a certain Saturday evening, and would stop at the. Farmer's House, a hotel on the levee in that city.

Accompanied by Leach, they again called upon the appellant, Mahoney, and arranged to have him arrest Shaw, whom Mahoney still knew as A. J. Perry, charged, as Mahoney supposed, with rape. Mahoney was furnished by the appellees with a minute description of Shaw, and told when he would return to Cairo, and where he could be found when he came.

Whyte, Johnson and Leach all testify that Mahoney agreed that he would make the arrest and notify the appellees to come for the prisoner, and would be reasonable in his charges, and said it was his official duty to make the arrest.

Shaw returned to Cairo on the day that the appellees had told Mahoney he would, and was arrested by Mahoney while making his way from the steamboat, from which he had just landed, up the levee to the Farmer's House. Mahoney had never met Shaw before, but identified him by the de-

scription furnished by the appellees, and because he expected to find him at that time and place.

Mahoney learned the next day for the first time that the real name of the man he had arrested was Shaw, not Perry, and that the charge against him was murder, and not rape. He suspected that there might be a reward for his arrest, and instead of notifying the appellees that he had Shaw, he telegraphed to the Secretary of State, asking if a reward had been offered, and was informed in reply that it had.

The appellees, feeling confident that Shaw would return to Cairo and fall into the hands of the officer, came to Cairo on Monday following the arrest on Saturday, armed with lawful authority to take Shaw to Jersey County.

Mahoney refused to deliver the prisoner to them, but brought him to Jersey County, surrendered him to the sheriff, and demanded the entire reward, as did also appellees.

This is a bill of interpleader, filed by the county of Jersey to require them to litigate their respective claims. The decree of the court awarded the reward to Mahoney, Whyte and Johnson on equal shares. Mahoney prosecutes this appeal to reverse the decree, insisting that the entire amount should have been awarded to him.

We are not at all impressed with the justice of Mahoney's claim to the entire reward.

He made the arrest in the discharge of an official duty without any knowledge of a reward having been offered. He performed no service with a view of earning the reward. The apprehension of the criminal was secured through the vigilance, energy and industry of the appellees and Leach, who were acting with the view of obtaining the offered reward. They devoted time and expended money in following and tracing Shaw, and thus acquired a knowledge of the facts necessary to effect his apprehension. The only connection Mahoney had with the affair was to attend at a time and place indicated by the appellees and make the actual seizure of the accused. This he did in an official capacity, and if the appellees and Leach are to be credited, upon

a distinct understanding that he was to receive reasonable compensation therefor.

After he had thus performed his official duty, he learned for the first time, of the offered reward; and though he had performed no service with the view of earning it, and knew that the prisoner had come into the custody of the law through the diligence and labor of the appellees, who were working for the reward, he determined to demand that they be denied all compensation and he awarded the entire sum.

This assumption savors so strongly of selfishness, and is in such utter disregard of the appellees' right, that it is not strange it obtained no recognition from the chancellor.

The fact that the appellees did not tell the appellant the true name of the man they desired to secure, and that they falsely stated the charge or crime for which he was to be arrested, is relied upon to support the appellant's right to the whole reward. Such misrepresentations and concealment constituted, it is argued, a conspiracy to perpetrate a fraud upon the appellant, whereby the appellees would obtain his services and they reap the sole benefit thereof.

Falsehood and deceit are always subject to moral condemnation, but it is not appointed to human tribunals to sit in judgment upon mere moral delinquencies or abstract wrongs, affecting only the conscience. Such tribunals take cognizance of delinquencies and wrongs only when another has been induced by them to do some act to his own injury.

Deceit and fraud, if not acted upon, or if not accompanied by injury, are moral, not legal wrongs. 5 Am. & Eng. Ency. page 331.

The appellees were under no obligations, either legal or moral, to disclose the identity of Shaw, or to make known the fact that a reward was standing for his arrest.

The appellant, as city marshal, was invested with such power to make arrests as constables had at the common law, or have under our statutes. Sec. 73, Ch. 24, R. S.

He understood it to be his official duty to make the

arrest and did so for that reason, and not because of any misrepresentations made to him. Nor were the misrepresentations made for the purpose of inducing him to act. The purpose of the deceit was to keep concealed the fact that a reward might be obtained. As the appellant did not act nor suffer injury by reason of the deceit and concealment, he has no legal ground to complain of it.

The decree of the learned judge to whom this case was submitted was, "that each of the claimants were so associated in procuring the apprehension and delivery of Shaw, that each was entitled to an equal share in the reward."

If any one has good right to complain of the conclusion thus reached, it is not, in our opinion, the appellant.

The decree must be, and is affirmed.