J. W. GLASS AND VIRGINIA GLASS, *Appellants,* v. J. W. CRAIG AND F. MORQUS, *Appellees.*

Opinion Filed March 22, 1922.

1.  When two persons trade with each other and there is nothing in their relations of a fiduciary character representations as to the value of property which is the subject of their trading activities, mere statements of opinion, belief or expectation, although untrue and resting upon no information, is not such a false representation as to constitute fraud and justify the recission of the sale that may have been consummated between them.

2.  In a suit for the cancellation of a conveyance of real estate upon the ground of fraud, expressions of opinion as to the value of the properties involved in the trade and statements as to the financial condition of the maker of the notes which are to form part of the consideration for the conveyance of the land and assertions as to the condition of the property which is security for such notes, although exaggerated, are not deemed to constitute such fraud as would render the conveyance of property purchased void.

3. The burden of proving fraud is upon the party complaining.

4. In administering the remedy of cancellation the fundamental theory on which equity acts is that of restoration. The parties should be left as nearly as possible in the position they occupied before the trade which is rescinded.

An Appeal from the Circuit Court for DeSoto County; George W. Whitehurst, Judge.

Decree reversed.

*Mabry, Reaves & Carlton* and *W. L. Pencke*, for Appellants;

*Treadwell & Treadwell*, for Appellees.

ELLIS, J.—This is a suit for the recission of an executed contract for the sale of lands and reconveyance by the parties of the consideration each paid and received and for an accounting between the parties of the money which the defendant derived from the property received by him and disbursements made thereon.

J. W. Craig and F. Morqus were the owners of four hundred acres of land in DeSoto County, Craig owned one hundred and sixty acres and Morqus two hundred and forty. The defendant, J. W. Glass was the owner of certain parcels of land in St. Lucie County which he had sold to W. H. Turner for fifty thousand dollars, fifteen thousand of which had been paid, the remainder was represented by seven promissory notes of five thousand dollars each executed by Turner and which were in the possession of Glass. The notes were dated October 5, 1916, the first payable May 1, 1919, and bearing interest at seven and one-half per centum per annum. Glass had given

his bond for title to Turner obligating himself to convey the property to Turner upon the payment of the notes and interest.

By some arrangement between Craig and Morqus, not disclosed by the pleadings, Craig seems to have acquired the latter's interest in the litigation.

There was an exchange of properties between Craig and Morqus on the one hand and Glass upon the other by which Craig and Morqus conveyed to Glass the DeSoto County property and Glass delivered to Craig and Morqus the seven notes of five thousand dollars each and executed to Craig a conveyance of the St. Lucie County property subject to the bond for title to W. H. Turner. The transaction occurred on April 24, 1918.

The complainant seeks a rescission of the sale and an accounting from the defendant of the rents and profits derived from the property conveyed to him by the complainants upon the ground of fraud which they say consisted of false and fraudulent representations made by the defendant Glass and his agent, R. F. Lewis, concerning the value of the St. Lucie County property and the financial responsibility of W. H. Turner, the maker of the promissory notes and his satisfaction in the trade he made with Glass whereby the former acquired the St. Lucie property.

In substance the allegations of the amended bill regarding the alleged false representations made by Glass and his agent, Lewis, are that Glass and his agent Lewis, proposed the trade to the complainants, offering to give them seven notes for an amount aggregating thirty-five thousand dollars to the complainants for the DeSoto County property, and that one of the notes for five thousand

dollars was to be retained by R. F. Lewis as compensation for his services in "negotiating said purchase." That Glass and Lewis offered to deliver six of the notes in consideration for the conveyance to Glass of the DeSoto County property.

It was alleged that Glass and Lewis represented the St. Lucie County property to be worth fifty thousand dollars, that Turner had purchased it for that price and had actually paid fifteen thousand dollars of the purchase price and had given his seven notes for the remainder and had executed his note for four thousand one hundred and fifty-six dollars representing the interest on the deferred payments to March 1, 1918, and that he had anticipated the due date of that note and paid it. That the seven notes of five thousand dollars each were each worth one hundred cents on the dollar and that Turner, the maker, was financially able and willing to pay the said notes when they became due and that he was entirely satisfied with the trade he had made for the St. Lucie County property. That Glass was the owner of the St. Lucie County property and held a good title thereto. That there was situated upon the land a twenty-eight room hotel, nicely furnished and was largely patronized by tourists during the winter months, that the hotel was in first class condition, was a popular resort for northern tourists and was a valuable asset to the property. That there was a valuable orange grove consisting of one thousand three hundred trees in good condition and producing well on the property.

That the complainants relying on these representations made by Glass and his agent, Lewis, consented to the transfer of their DeSoto County lands to Glass and executed to him a deed therefor receiving in exchange six

of the Turner notes, the seventh being retained by Lewis as commission for negotiating the trade and a deed from Glass to the St. Lucie County property subject to the bond for title to Turner.

That all the representations made by Glass and his agent, Lewis, were false in that at the time they were made the St. Lucie property was not worth the amount that Glass represented it to be worth, that there was no orange grove upon the place of the description given by Glass, that the hotel was in bad condition, that Glass did not have a merchantable title to the place and that Turner was dissatisfied with his trade and was not financially able to carry it through and moreover was unwilling to do so.    That this state of facts was not discovered by the complainants until several months after the trade in which, upon Glass' suggestion they had conveyed their DeSoto County property to Virginia Glass, the wife of J. W. Glass.    That she had paid nothing for such conveyance and that the only consideration which they had received consisted of the six notes which had been delivered to them by Lewis.

Glass and his wife demurred to the bill for want of equity and pointed out that it is deficient in not alleging that the complainants offered to return to the defendants the consideration which they had received in the transaction; that it is not alleged that the complainants were ignorant of the alleged falsity of the representations said to have been made; that no reason is given for the complainant's failure to make examination of the property in St. Lucie County nor is it alleged that the complainants believed or had a right to believe the alleged various representations made to them by Glass or his agent, Lewis.

The demurrer was overruled and the defendants, J. W. Glass and wife, answered the bill of complaint in which it was denied that Lewis was authorized by Glass to retain one of the notes as his commission or that Lewis was authorized to act for them as their agent or otherwise in the transaction and that he was not authorized by them to make any representations with reference to the notes nor the value of the St. Lucie property or as to the financial responsibility of Turner or any of the representations alleged to have been made by him and that Glass, himself, had made no such representations. It was averred that on the date of the transaction the St. Lucie property was reasonably worth forty thousand dollars and it denies that Glass did not have a merchantable title to the same.

The answer averred that Glass examined the property in DeSoto County, personally negotiating the transaction on behalf of himself, that he had no knowledge or ever consented to any representations which Lewis may have made concerning the St. Lucie County property and denied that he authorized Lewis to retain one of the notes for five thousand dollars as his commission in the transaction and that if the note was retained by Lewis it was paid by the complainants without the knowledge of the defendants and it is averred upon information and belief that Lewis was employed by and acted as agent for the complainants in conjunction with W. E. Wilder, whom it is alleged in the bill was the agent of the complainants.

It is averred that Glass agreed to purchase the complainant's property in DeSoto County and agreed to give therefor the seven promissory notes of W. H. Turner for five thousand dollars each and to convey to the complainants by warranty deed the St. Lucie County property subject to the bond for title to W. H. Turner and that

said notes of Turner were to be transferred to the complainants without recourse on Glass.

That such was the character of the contract and the exchange of properties took place in accordance therewith.

It is averred that the defendants have ever since the day of the transaction remained in possession of the property conveyed to them by the complainants, that they at no time ever had any knowledge that the complainants were in any way dissatisfied with the transaction until the filing of the bill of complaint, that the transaction was without any fraud, misrepresentation or concealment on the part of the defendants; that they had at no time concealed or attempted to conceal, misrepresent or in any way mislead or attempted to mislead the complainants in the transaction which was carried on so far as the defendants were concerned in a fair and honest manner. That the complainants had full knowledge at the time of the transaction of the property conveyed to them and that Lewis acted as agent on their behalf.

There was attached to the answer as Exhibit "A" a written agreement between J. W. Glass and the complainants which it was averred was the repository of the agreement made between them in the transaction and which was attached to the answer and made a part of it.

That document was signed and sealed by Glass and the complainants, duly witnessed by three witnesses and acknowledged by the parties before a notary public. The document recited that Glass agreed to transfer and deliver to Craig and Morqus without recourse upon Glass the seven promissory notes of Turner for the sum of five thousand dollars each. That Glass also agreed to convey to Craig and Morqus the St. Lucie County property by

a sufficient warranty deed subject, nevertheless, to the bond for title to Turner. That in consideration of the transfer of the notes and conveyance of the property in St. Lucie County, Craig and Morqus would convey to Glass by good and sufficient warranty deed the DeSoto County property and give to him a bill of sale for all the goods and wares and personal property found on the premises in DeSoto County save three head of cattle, one horse and fifteen hogs.

It was mutually agreed that each of the parties to the contract should furnish to the other an abstract of title to the respecive properties conveyed. It was mutually agreed that the title to each of the properties should be a merchantable title except that the St. Lucie County property, conveyed by Glass, should be subject to the bond for title to Turner. It was further agreed that the delivery of the deeds by the respective parties as well as the delivery of the promissory notes by Glass to Craig and Morqus should be at the office of R. F. Lewis in the City of Arcadia.

In the answer to the amended bill it was averred that pursuant to the contract the defendant, Glass, on the 24th of April, 1918, transferred and endorsed without recourse upon himself the seven promissory notes of Turner and delivered the same to W. E. Wilder, who was the agent in the transaction for Craig and Morqus and that at the same time he executed a deed, joined by his wife, to the St. Lucie County property which he had agreed to convey to the complainants and delivered the deed and notes to Wilder as agent for the complainants; that on the same day, the complainants in consideration therefor, executed and delivered to the defendant, Virginia Glass, at the request of J. W. Glass a warranty deed for the DeSoto County property.

A commissioner was appointed to take testimony and upon his report coming in the Chancellor entered his final decree from which this appeal was taken. It was decreed that the equities in the case were with the complainants, Craig and Morqus; that J. W. Glass and wife should reconvey without covenants of warranty the DeSoto County property conveyed by the complainants to Glass upon the reconveying, by the complainants to Glass without covenants of warranty of the St. Lucie County property and the delivery to the defendants or their attorneys of record of six of the promissory notes signed by Turner and payable to Glass in the sum of five thousand dollars each.

It was further decreed that the cause be referred to a special master to take testimony as to the permanent improvements made by the defendants upon the DeSoto County property and the value of such improvements together with the taxes and other equitable claims which the defendants paid upon the property and also to take such testimony as might be offered in behalf of the complainants as to taxes and other charges paid by the complainants on the St. Lucie County property and that Glass pay the costs of the suit.

We are treating the bill of complaint as amended as sufficient in its allegations to justify a decree of rescission, although the bill is by no means free from the criticism that in the essential allegations of fraud justifying a cancellation of the conveyances or rescission of the sale it is almost if not fatally weak and insufficient. The parties were trading at arms length, there was nothing in their relations of a fiduciary character, the defendant Glass was under no obligation of any kind to the complainants to disclose more information in relation to the subject

matter of the contract than the parties might have discovered by a little diligence. Representations as to the value of property which is the subject of trading activities, or the financial responsibility of certain persons whose notes are being traded, are within the limitations which custom and law allow for the enthusiasm of the trader in crying his wares. A mere statement of opinion, belief or expectation although untrue and resting upon no information is not such a false representation as to constitute fraud. So are representations in respect to the value of anything bought or sold, regarded as expressions of opinion and not as representations of fact. They do not constitute. fraud which as the basis of a suit for rescission of contract justifies a decree in the complainant's favor, where the party seeking the relief had no right growing out of their relations to rely upon the representations of the other. See Hart v. Marbury & Beal, 82 Fla. 317, 90 South. Rep. 173.

To say that the maker of a promissory note which one is trading to another is a person financially able to pay his obligations is to make no declaration other than the note itself proclaims. The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, that he cannot do unless he is financially able. When one becomes or is about to become the holder in due course of a promissory note therefore, the important question most naturally is the financial ability of the maker. The note proclaims his ability to pay; the seller says the maker is able to pay, and if he endorses it without qualification he engages that on presentment it shall be paid. So he makes no representation that the note itself does not make. But in this case the defendant Glass refused to endorse the notes, which were transferred to

the complainant, without qualification but said that he would endorse without recourse and actually did so, which was in itself an additional warning to that which prudence gave, to inquire and make certain about the value of the notes.

The allegation that Glass, the defendant, represented to Wilder, agent for the complainants, that the maker of the notes had paid a note which he had given for the interest to become due on the notes at the next annual interest paying date, is a representation of like character to that of the maker's financial responsibility. The fact was material only so far as it showed the maker's willingness to pay his obligation, so much the notes themselves asserted. The representations as to the condition of the property, such as the nature of the soil, the size and number of orange trees, the character of buildings located on the premises and the state of repair they were in, are facts so obvious that a casual observer might note them, certainly they are matters with which any man, who has progressed beyond the tender period of infantile credulousness, would concern himself in a trade for the property. Other alleged representations were of a similar character. The allegations of the bill are not so clear as to the matter of complainant's acting promptly upon the discovery of the alleged fraud to preclude the idea of a ratification of the transaction. The bill was filed on January 22nd, 1919. The transaction occurred April 24th, 1918. The first of the Turner notes did not become due until May 1st, 1919. It is not alleged when the complainant discovered that the representations made to them were untrue. The allegations of the bill are not inconsistent with the idea that the complainants acted in the entire transaction with the most careless and inexcusable indifference to their own interests while having no right whatsoever to rely upon

the representation alleged to have been made by the defendants. And none of the alleged representations made by Lewis or Glass appear to be of such character as to be peculiarly within their knowledge. In other words all representations alleged to have been made were easy of verification or disproof upon slight inquiry or personal inconvenience.

The defendants answered the bill, however, denying the allegations upon which the complainants relied for relief and denied that Lewis was the agent of J. W. Glass or acting for him or had any authority to make any representations in his behalf; and denying that the note for five thousand dollars was paid to Lewis by Glass or that it was paid to Lewis with the knowledge or consent of Glass, but averring on the contrary that the note was paid to Lewis if at all by the complainants.

We have carefully read the testimony reported by the examiner to the Chancellor and do not find in it a case for the cancellation of the conveyances. The testimony shows that many of the representations were merely expressions of opinion as to value, statements as to Turner's financial responsibility and willingness to pay his notes, and assertion as to conditions regarding the St. Lucie County property, none of which were concerning facts peculiarly within the defendant's knowledge and all of which were easily within complainant's means of ascertainment. The testimony of the witness Wilder, complainant's agent, tends to show that the complainants had no faith in the trade, "thought there was nothing in it" as he expressed it and left the transaction to Mr. Wilder, who thought the trade was alright if there was "anything in Dick Lewis."

The written contract shows that Glass was to pay the complainants the seven notes for a sum aggregating thirty-five thousand dollars. It is not clearly shown that he ever supposed he was paying less, nor that he employed Lewis to represent him, nor that Lewis did act for him any more than he acted for complainants, nor that Glass paid him or agreed to pay him for his services, nor that the note was given to Lewis by Glass or that it was given to him with the former's knowledge or consent.

The burden of proving the fraud or misrepresentation is upon the party complaining. We are mindful of the rule announced by this court in many cases that unless the findings of the Chancellor on the facts are clearly shown to be erroneous they will not be disturbed. See Simpson v. First National Bank of Pensacola, 74 Fla. 539, 77 South. Rep. 204; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; City of Jacksonville v. Huff, 39 Fla. 8, 21 South. Rep. 774; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231; Waterman v. Higgin, 28 Fla. 660, 10 South. Rep. 94.

Our conclusion in this case is that the Chancellor erred in finding that in the transaction between the complainants and the defendant, Glass, Lewis acted for Glass as his agent. That the Chancellor also erred in finding that Mr. Lewis was paid the five thousand dollar Turner note by Glass, as compensation for his services or that it was paid with Glass' knowledge and consent.

The evidence seems to us to be indisputable that the defendant, Glass, obligated himself to pay to the complainants seven promissory notes of Turner's for five thousand dollars each and that he actually paid the same.

In administering the remedy of cancellation the funda-

mental theory on which equity acts is that of restoration and the circumstances of this case as we understand them from the bill, answer, exhibits and testimony are such that it would be inequitable to permit a rescission of the conveyances without restoring the status quo. The decree required the complainants to restore only six of the notes which they received. This feature of the decree alone would warrant its reversal.

The decree is therefore reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.