ANDREW J. C. STOKES, J. HENRY BREMER, JOSEPH L. DONAHAY, ALONZO BROWER, and HARRY SCHNABEL, *Appellants*, v. VICTORY LAND COMPANY, a Corporation, *Appellee*.

Division A.

Opinion filed April 9, 1930.

Petition for rehearing denied April 26, 1930.

*Bickers & Ramseur,* for Appellants;

*Bussey, Mann & Barton,* for Appellee.

ELLIS, J.—In September, 1925, the Victory Land Company, a corporation, engaged in business in Pinellas County, agreed to sell and convey to Andrew J. C. Stokes and five other persons certain parcels of land described as lots three to eighteen, inclusive, in Block 99 of Lakewood Estates, Section "D," according to a map or plat which was recorded in the office of the clerk of the circuit court. The purchaser agreed to pay for the lots the sum of $68,000, in four installments of seventeen thousand each. The first installment was paid and the three others were provided in the contract to be paid in one, two and three years respectively. The contract was in writing and executed by the parties under seal. The contract provided that the conveyance of the lots was to be made when the buyers made the payments and performed the covenants on their part to be performed. It contained a provision that the contract could not be assigned without the consent of the seller in writing and "All statements and representations made by the SELLER or its representatives concerning the property herein sold are set forth in this contract, and no other statements or representations not herein set forth shall be binding on the SELLER."

The contract provided that in case the buyers should fail to pay the interest upon the deferred payments or fail

to perform any of the covenants on their part to be performed for the space of thirty days the seller should have the option of terminating the contract and hold the payments made by the buyers as rent for the property. McDermott, one of the buyers, assigned his interest to Andrew J. C. Stokes.

Two years and nearly two months passed during which time the buyers· paid to the seller thirty-four thousand dollars on the principal and about $4,080 by way of interest. These payments apparently consisted of the cash payment and the first deferred installment which became due September 1, 1926, and one year's interest upon the three deferred installments. Then in October, 1927, the buyers, who were A. J. C. Stokes, J. Henry Bremer, Joseph L. Donahay, Alonzo Brower and Harry Schnabel (McDermott having transferred his interest to Stokes), exhibited their bill in chancery against the Victory Land Company and prayed that the contract be rescinded.

The suit rests upon the following circumstances: The Victory Land Company at the time the contract was made was developing the Lakewood Estates and was offering the lots for sale to purchasers and was representing by newspaper advertisements, letters, circulars, lantern slides, illustrated maps and by other means that the lands would be developed into a beautiful and valuable subdivision by laying down sidewalks, beautifying the streets and parkways with trees and ornamental shrubbery, "carrying out an elaborate program for beautiful entrances, Venetian pool and Lake Maggiore Gardens; clearing and grading lots; and making other extensive improvements." That in addition to these general statements the corporation specifically represented to complainants as an inducement to make the contract that the "Venetian pool would be built less than one-half mile, to-wit, 2640 feet east of

Section 'J' of said Lakewood Estates'' and would be located in Section "H" of the said estates and that work had already begun upon the Venetian pool and the existing program of construction called for the completion of the pool before January 1, 1927; that such representations so specifically made to complainants were false, fraudulent and misleading; that work upon the pool was not in progress, nor has any construction work of any kind or nature been done upon the project.

The allegations of the bill may be considered to be sufficiently clear as to the falsity of the specific representations and fraudulent purposes of the seller in making them and the complainant's deception thereby. Much of this, however, appears in the bill by way of argument. Yet, it may be allowed that there are enough clear and unequivocal statements of fact to answer the requirements of pleading so far as the false representations by the seller and complainants' belief therein are concerned.

There is also another theory which pervades the bill upon which it may be said that the prayer for a rescission of the contract is also based. It is that the contract through some sort of trick or deception practiced by the seller does not express the true purpose and intention of the parties and that the complainants were induced to sign it "without having investigated the contents thereof." The allegations of the bill in this behalf we deem to be insufficient to support a reformation of the contract and rescission of it. It may be said that the paragraph containing such allegations weakens rather than strengthens the bill in its entirety. Because in the absence of any sufficient showing that the complainants were induced to enter into a contract the terms of which did not express the true purpose of the parties, the presumption of law that it does, if not strengthened, is at least not potentially rebutted.

The intention of the parties to a contract is to be deduced from the language employed by them. The terms of the contract, when unambiguous, are conclusive in the absence of averment and proof of mistake, the question being not what intention existed in the minds of the parties but what intention is expressed by the language used. Continental Casualty Co. v. Bows, 72 Fla. 17, 72 So. R. 278; Atlanta & St. A. B. R. Co. v. Thomas, 60 Fla. 412, 53 So. R. 510.

The Victory Land Company demurred to the bill. It was a general demurrer for want of equity and also attacked the sufficiency of the bill's allegations in several particulars. The demurrer was sustained and the bill dismissed. From that order the complainants appealed.

As a general demurrer to a bill in equity should not be sustained if it contains any ground for equitable relief, it is necessary to ascertain whether such ground exists. See Johnson v. McKinnon, 45 Fla. 388, 34 So. R. 272; Miami v. Shutts, 59 Fla. 462, 51 So. R. 929; Merritt v. Mace, 73 Fla. 883, 75 So. R. 57; Amos v. Postal Tel. Co., 76 Fla. 465, 80 So. R. 293; Boyd v. Gosser, 68 Fla. 395, 67 So. R. 89.

The only ground presented by the bill as the basis for the relief sought and which may be urged with any claim of right in the alleged misrepresentation by the seller as to the building of a Venetian pool in Section "H" less than a half mile east of Section "J." The complainants purchased sixteen lots in Section "D."

It is alleged that Section "D" in which complainants purchased lots is located in the tract of land known as "Lakewood Estates" but just where it is located with reference to Section "J" or "H" is not disclosed by the bill or the exhibit "A" which purports to be a plat comprising all of Sections "F, G and H" and parts of Sections "J and K" of Lakewood Estates.

From anything appearing to the contrary in the bill, Section "D" of Lakewood Estates may be part of a separate and independent enterprise from that embracing Section "H" where the Venetian pool was to have been constructed, and may have formed no part of the plans for development in relation to which the alleged representations were made and printed in circular form for distribution.

It is therefore not at all clear in what degree if any the so-called representations as to the development of that part of Lakewood Estates embracing Sections "J and H" were material representations as to the improvement or development of that portion of the Estates embracing Section "D". The two tracts of land may be separated by natural or artificial barriers, by distance so great that improvement of one could not by much show of reason be regarded as a benefit to the other. One part, embracing two or more sections or divisions, may be designed for a residential district with all the usual restrictions and attractive buildings and play grounds incident to such enterprises and the other designed for business or other purposes. There is involved in the matter of false representation as a basis for rescission of contract the element of resulting injury to the person seeking the relief which is not supplied by the bare allegation of such injury. There must appear such facts as show a connection between the representation as made and the land value as affected by it. This material element of the alleged fraud may not be left to mere conjecture and averment. See Allen v. United Zinc Co., 64 Fla. 171, 60 So. R. 182; 14 Am. and Eng. Ency. of Law (2 Ed.) p. 137 (X).

"Falsehood and deceit are always subject to moral condemnation, but it is not appointed to human tribunals to sit in judgment upon mere moral delinquences or

abstract wrongs, affecting only the conscience. Such tribunals take cognizance of delinquencies and wrongs only when another has been induced by them to do some act to his own injury. Deceit and fraud, if not acted upon, or if not accompanied by injury, are moral, not legal wrongs.'' Mahoney v. Whyte, 49 Ill. App. 97; Bartlett v. Blaine, 83 Ill. 25 Am. R. 346.

It is of the very essence of an action of fraud or deceit that the same shall be accompanied by damage and neither *damnum absque injuria* nor *injuria absque damnum* by themselves constitute a good cause of action. See Deobold v. Oppermann, 111 N. Y. 531, text 542, 7 Am. R. 760; 3 Blackstone's Comm., p. 125; 17 C. J. 1125.

This principle is so generally understood and universally recognized that citation of authority is a work of supererogation.

The allegation in the bill that the seller.''did falsely and fradulently represent to complainant, Andrew J. C. Stokes, that work had already begun upon said Venetian Pool, and that the then existing program of construction called for the completion of said Venetian Pool on or before the first day of January 1927; and that the work on same would be pursued to a conclusion without interruption'' is relied upon as the ground for the relief prayed.

It is claimed that the representation was as to an existing material fact. See Riverside Inv. Co. v. Gibson, 67 Fla. 130, 64 So. R. 439; Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 So. R. 1.

It will be observed that the representation consisted in part of a statement of fact, viz: That work had begun on the Venetian Pool and that the program of construction called for its completion on January 1, 1927, and in part of a promise, viz: That work on the pool would be pursued to a conclusion without interruption.

Assuming that such representation by the seller was of and "concerning the property" described in the contract, it was expressly excluded from consideration by the written agreement of the parties as already quoted. If, however, that provision of the contract is not to be observed it must be because of a fraud perpetrated by the seller through false representations as to a material fact concerning the property which was acted upon by the purchaser to his injury.

False promises or expressions of opinion that are incorrect either as to value or the progress or completion of work in a program of development do not constitute a ground for the rescission of a contract for fraud. See Hart v. Marbury, 82 Fla. 317, 90 So. R. 173; Glass v. Craig, 83 Fla. 408, 91 So. R. 332.

False representations to constitute fraud must relate to some material past or existing fact. Harrington v. Rutherford, 38 Fla. 321, 21 So. R. 283; 14 Am. and Eng. Ency. Law (2 Ed.) p. 47.

If the representation as to a Venetian Pool not in existence but only as part of a plan for improvements to be made upon certain property may be held to be a representation as to an existing fact, still the representation concerning it was that "work had already begun upon it." The representation was itself a denial that the pool was in existence and amounted merely to an assertion that the seller had begun to construct it. It is not stated what the seller meant nor what the buyer understood by the phrase "work had already begun upon" it. If it was understood that ground had been broken and materials laid down for its construction it must be admitted that such a fact was ascertainable by the purchaser by merely inspecting the premises. It is not alleged that the purchaser was so situated that inspection of the premises, an exam-

ination of the site by him was either impossible or inconvenient or that he was without equal means of information, nor that he was unacquainted with the proposed location of the pool as was the case in Riverside Inv. Co. v. Gibson, *supra*.

As said in the case of Glass v. Craig, *supra*, ''The allegations of the bill are not inconsistent with the idea that the complainants acted in the entire transaction with the most careless and inexcusable indifference to their own interests while having no right whatsoever to rely upon the representation alleged to have been made by the defendant'' concerning the construction of the pool. Upon the other hand, they expressly agreed that no representations or statements not set forth in the contract should be binding upon the seller concerning the property described in the agreement.

A misrepresentation to be ground for rescission must be in reference to some material thing unknown to the plaintiff either from his not having examined for want of opportunity to be informed or from his entire confidence reposed in the defendant. As said in the case of Glass v. Craig, *supra*, such confidence should be a right growing out of the relations of the parties of a fiduciary character. See Stephens v. Orman, 10 Fla. 9.

The principle is stated in 2 Pomeroy's Eq. Jur. (3 Ed.) Sec. 893. ''The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled.'' See also Hirschman v. Hodges, O'Hara & Russell Co., 59 Fla. 517, 51 So. R. 550.

A brief analysis of the case as made by the bill shows that the contract was made on September 21, 1925; that as an inducement to making the contract on complainants' part

they believed from representations made by the seller that work on a Venetian Pool, to be constructed in Section H of the Estates, had already begun. Yet, notwithstanding that, the complainants and defendant were trading at arm's length, that no relations of a fiduciary character existed between them and the complainants had the opportunity to examine the site of the proposed pool and ascertain for themselves that the work had not in fact begun, the parties agreed in writing that no statement or representations concerning the property not set out in the contract should be binding on the seller. That complainants then made the first payment on the contract, a year afterward made the second payment and interest upon the three deferred payments; then waited a year and a month before instituting the suit to rescind the contract upon the alleged deception and injury. It must be borne in mind that the alleged deception consisted in the statement that ''work had begun on the pool'' before the contract was signed.

The bill is not only deficient in allegations showing a lack of opportunity on complainants' part to inform themselves and the resultant injury to them from the failure to construct the pool but it shows unmistakable evidences of laches on their part in seeking relief and indifference as to their interests in the first place.

The bill is without equity and the order sustaining the demurrer is affirmed.

BROWN, AND BUFORD, J. J., concur.

WHITFIELD, STRUM AND BROWN, J. J., concur specially.

TERRELL, C. J., not participating.

WHITFIELD, J.—The demurrer to the bill of complaint was properly sustained and as the decree appealed from

states that it "appearing to the court from statement of counsel for complainants that they did not desire to amend said bill of complaint," the decree of dismissal should be affirmed.

BROWN, J. (Concurring).—I concur in the opinion of Justice ELLIS with the following modification: The bill *did* allege that the vendor represented that the Venetian Pool was within "*two blocks*" of the property sold.

The representation that work had already begun thereon was a misrepresentation as to a material fact, but as stated by Justice ELLIS, this was a matter open to ordinary observation, and the bill does not allege that the vendor did not have an opportunity to determine the falsity of it by inspection. This, coupled with the making of the payment a year later, and the delay of another year or more before bringing suit, does not make out a good case for rescission.

There are cases where a party is justified in relying on the vendor's representation as to existing physical facts without making an investigation for himself, where, for instance, he is designedly lulled into a sense of security by the fradulently conceived wiles of the vendor, or where he cannot conveniently make such investigation by reason of the inaccessibility of the property. But this bill does not apparently make such a case. See on this subject Pomeroy Eq., Jurisp., Vol. 2, 4 ed. Sections 891-894.

But this proposition is considerably modified by section 895 of the cited work, wherein Pomeroy says that where a positive representation of fact within the knowledge of the vendor is made, the party receiving it is generally entitled to act upon it without making an independent investigation. The mere existence of the opportunity for examination, he says, is not sufficient. But this principle does not appear to have been accepted by our previous decisions, at least as regards physical facts, open to ordinary obser-

vation.   Of course, as Pomeroy says, if the vendee does not rely upon the representation of the vendor, and starts his independent investigation, he must be held chargeable with all the facts that he could have learned had he pursued such investigation with reasonable thoroughness:

It may be that the vendee could set up some of the matters alleged in this bill as a partial defense, in a suit *by the vendor* against him, by way of set off, recoupment or counterclaim, but I hardly think the bill as drawn makes out a good ground for rescission and cancellation. See Smith v. Homeseekers Realty Co., 122 So. R. 708.

Since the complainants announced through their counsel that they did not desire to amend, the chancellor properly dismissed the bill.

STRUM, J., concurs.