Harriett J. Sutton, a Widow, v. Gulf Life Insurance Company.

189 So. 828
Division A
Opinion Filed June 23, 1939
Rehearing Denied July 7, 1939

*DeHoff & DeHoff* and *Richard D. Sutton,* for Appellant;

*B. M. Wimberly, R. R. Axtell* and *W. Gregory Smith,* for Appellee.

THOMAS, J.—To a bill of complaint with no unusual features, filed by the assignee of a mortgage given to secure part of the purchase price of certain property, the mortgagor offered the defense that the execution of the instrument was procured through fraud by the original mortgagees.

The principal misstatements relied upon and urged by counsel for the mortgagor, appellant here, to sustain her position were that one E. H. Armstrong did not own the property when in truth he had the title to it, and that certain improvements would be made.

The first alleged misrepresentation is used as a basis for one of the questions propounded to us by appellant.

This court has on several occasions defined fraud. "In Allen v. United Zinc Co., 64 Fla. 171, 60 South. 182, we held: 'To constitute fraud, a misrepresentation must be of a specific material fact that is untrue and known to be so, and stated for the purpose of inducing another to act, upon which statement the other relies in acting to his injury.' We further held therein: 'Averments in pleas of mere

opinions and promises and of indefinite matters are not sufficient to show fraud.'" Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 So. 1, text 2.

Even accepting appellant's version of the transaction, that in the negotiations which culminated in the transfer of the property it was stated to her that a certain person had no interest therein, nothing appears to satisfy us of the materiality of such a declaration and this is an essential element of fraud. For aught we know the value of the land and the condition of the title were wholly unaffected by any connection which Armstrong may have had with the transfer.

"There must appear such facts as show a connection between the representation as made and the land value as affected by it. This material element of the alleged fraud may not be left to mere conjecture and averment. See Allen v. United Zinc Co., 64 Fla. 171, 60 So. 182; 14 Am. and Eng. Ency. of Law (2d Ed.), p. 137 (X).

" 'Falsehood and deceit are always subject to moral condemnation, but it is not appointed to human tribunals to sit in judgment upon mere moral delinquencies or abstract wrongs, affecting only the conscience; such tribunals take cognizance of delinquencies and wrongs only when another has been induced by them to do some act to his own injury. Deceit and fraud, if not acted upon, or not accompanied by injury, are moral, not legal, wrongs.' Mahoney v. Wnyte, 49 Ill. App. 97; Bartlett v. Blaine, 83 Ill. 25, 25 Am. Rep. 346.

"It is of the very essence of an action of fraud or deceit that the same shall be accompanied by damage, and neither *damnum absque injuria* nor *injuria absque damnum* by themselves constitute a good cause of action. See Deobold v. Oppermann, 111 N. Y. 531, text 542, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; 3 Blackstone's Comm. p.

125; 17 C. J. 1125." Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, text 410.

It is noteworthy that the agreement signed by appellant wherein she promised to execute the mortgage in exchange for the deed containing the name "Armstrong's Estates, Inc.," as the other party and bore at the end the words, "By E. H. Armstrong, President." Thus appellant was put upon notice that Armstrong was interested in the deal and her only excuse for ignorance of the information apparent on the face of this contract was that she did not read it at the time. If there were merit to her claim that the alleged misstatement was material it would be dispelled by this neglect.

It is urged that the other misrepresentations by which appellant was injured referred to contemplated improvements. Their character may best be illustrated by quoting excerpts of her testimony describing them:

"Q. Were the talks very enticing?

"A. Yes, they were very confident that this property would be used for real estate and that buildings and homes would be built there and that the city would continue growing north. * * *

"A. They even went—in their talks—went so far as to say that we probably would not even have to make more than the first payment before it changed hands, and that the buildings would be started in two or three months. * * *

"Q. Did they point out to you where these buildings would be located and give you any description of them?

"A. They showed me certain streets and where others would probably go through and lots by the river or creek that would have at least $10,000 residences."

The unimportance of such statements was treated in Day v. Weadock, 101 Fla. 33, 134 So. 525, where the Court distinguished between false representations and material

facts and speculative or opinionative matters. The above answers given by appellants did not show declarations that any thing had been done to assure the construction of improvements, but recited mere possibilities that such benefits might accrue in the future.

That appellant may have been the victim of what we have come to denominate in common parlance "high pressure salesmanship" may be true, but her proof fell far short of establishing the defense she claims to the foreclosure.

The decree is affirmed.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.