PEARSON, Judge.
The appellant was the plaintiff in the trial court and the appellee was defendant. The appeal is from a final decree which denied plaintiffs prayer for the rescission of its lease of a store building in a shopping center. The appellant contends that it is entitled to a cancellation or a rescission of the lease because the developer’s failure to build the shopping center as covenanted is so material in extent that the breach defeats the purpose of the lease.
The appellant S. H. Kress & Co. entered into a lease agreement with Desser & Garfield, Inc., the developers of the shopping center. Desser & Garfield, Inc. has not filed a brief in this appeal, although it was joined as a party appellee. The appellee, Teachers Insurance and Annuity Association of America, a corporation, holds a mortgage upon the entire shopping center.
The lease between Kress and Desser & Garfield was entered into prior to the completion of the shopping center. The lease was initially prepared by Kress’ legal department, but it was put into final form after consultation and negotiations between the lessor and the lessee. The pertinent portions of this lease are as follows:
“5. Anything in this Lease to the contrary notwithstanding, it is understood and agreed that Tenant in no event shall be required or obligated to open its store in the Leased Premises for business to the general public or to pay any rent, including minimum rent, unless and until all of the following conditions and requirements have been met:

“(b) Landlord has completed the construction of the Common Facilities and the Common Facilities have been made available to the agents, employees, customers, suppliers, and invitees of Tenant and of all other occupants of the Entire Premises in accordance with all requirements of this Lease; and
“(c) Grand Union Supermarkets, S. S. Kresge and Broward Drug Store have opened, or will open, at same time as Tenant, their stores in the Entire Premises for business to the general public * * *."
*194 ******
“25. (a) (1) Landlord acknowledges the importance of the shopping center as an entity and the interdependence of the tenants therein, as they may from time to time be, for sales volume and satisfactory store operations and that the Common Facilities and the means of ingress and egress to the Center from adjacent traffic arteries are of vital importance to Tenant. The Landlord covenants and represents that the physical design of the Entire Premises, the existing and proposed buildings and the location of such buildings, existing and ■proposed, in relation to each other and to the Common Facilities and the Leased Premises shall be substantially maintained, as shown on Exhibit B, during the term of this lease and any renewal thereof.”
******
“41. This Lease, and the exhibits enumerated herein and the preliminary plans and specifications that are part hereof, contain and constitute the entire contract between the parties hereto. No oral representations, promises or undertakings, if any made, shall survive or continue after the execution of this Lease and shall be deemed to have been merged with this Lease * *
The lease contained a diagram of the entire shopping center as proposed.
There was extensive evidence in the record to show that a variety store, which the appellant operates, depends for its existence upon feeder traffic; that is, persons who come into the area to make purchases at other stores. The appellant lost money in the operation of its store. After three years of operation, the appellant abandoned the store, but has continued to pay' rent. The record supports the conclusion that the appellant, Kress, would not have entered into the lease if it had known that the shopping center would not be completed according to the plan. The record also reveals that the developer intended to complete the shopping center.
The essential question before the chancellor was whether or not the appellant was entitled to be relieved of further responsibilities under the lease because the lessor had not completely developed the shopping area.
The lease contains some 54 pages and four exhibits. Paragraph number five contains definite requirements for the starting of appellant’s liabilities after the construction of the common facilities and the opening of several other large stores therein enumerated. The lease does not contain a covenant that the entire premises will be completed.
The appellant contends that the covenant to maintain necessarily requires that the buildings shown on the diagram attached to the lease will be built. The covenant is not ambiguous. The developer has agreed that, in developing the area, he will make no substantial deviation from the location of buildings shown on the diagram. This is not a covenant to build.
The appellant relies upon a recently decided case in the State of Oklahoma as authority for the proposition that one who fails to construct a shopping center according to a site or plot plan is subject to the cancellation of leases. See Berland’s Inc., of Tulsa v. Northside Village Shopping Center, Inc., Okl.1963, 378 P.2d 860. An examination of the Berland’s case reveals that, at the request of Berland’s, the following provision was inserted in the lease:
“Lessor covenants * * * that the area indicated as parking areas on the plan hereto attached and made a part hereof shall be appropriated, set apart and surfaced with a good grade of hard-surface material, for the parking of motor vehicles * * * and to maintain said parking area for parking purposes exclusively throughout the term of this lease.”
Notwithstanding the covenant, a revised parking plan was made, which eliminated a substantial portion of the North parking area. This caused the front of the shopping *195 center to become the back and the back of the center to become the front. Considerably less pedestrian traffic traveled past Berland’s store after the radical change in design.
The Berland’s case is not authority for the proposition urged on this appeal because the lease in this case does not contain a covenant to construct any of the buildings which have not been built.
The appellant suggests that, if the lease is held to have been silent as to a covenant to complete, the court should supply an implied agreement to substantially complete the entire premises within a reasonable time.
We recognize that the shopping center concept denotes a unified complex of stores,[1] and that the success of these stores may depend upon the center’s development in substantial accordance with an overall lay-out and development plan created by the lessor.[2] However, if the development of the balance of the center was of substantial importance to the appellant, the improvements to be made in the entire premises, in addition to those to be made in the leased premises, should have been spelled out in the lease.
The drafting of shopping center leases may require the balancing of conflicting demands of the landlord, the tenant and, in some cases, a mortgagee.[3] We have no authority to substitute our judgment for that of the parties by rewriting the contract. See Savage v. Horne, 159 Fla. 301, 31 So.2d 477, 480 (1947). The terms of the lease are conclusive. See Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, 410 (1930). In the absence of an agreement to complete, or substantially complete, the shopping center according to a prescribed plan, there is no basis for implying a time for performance. Cf. Sun City Holding Co. v. Schonefeld, 97 Fla. 777, 122 So. 252 (1929).
The appellant has failed to demonstrate that the decision of the chancellor is against the manifest weight of the evidence, or that the appellant was entitled to relief under either of the equitable principles for rescission set forth in Steak House, Inc. v. Barnett, Fla.1953, 65 So.2d 736. See also Smith v. Home Seekers’ Realty Co., 97 Fla. 236, 122 So. 708, 67 A.L.R. 807 (1929).
Affirmed.

. See 2 Powell, Real Property § 242[2].

. See Colbourn, A Guide to Problems in Shopping Center Leases, 29 Brooklyn L. Rey. 56, 70 (1962).

. See Pollack, Shopping Center Leases, 9 Kan.L.Rev. 379 (1961).