740 So.2d 59 (1999)
Patrick J. CASEY, Appellant,
v.
Stanford COHAN, William R. Boose, III, Alan J. Ciklin, Charles A. Lubitz, Richard L. Martens, Louis R. McBane, Phil D. O'Connell, Jr., Michael D. Gordon, Lynda J. Harris, Robert L. Crane, Brian M. O'Connell, and Richard B. Crum, Appellees.
Nos. 97-1669, 97-4282.
District Court of Appeal of Florida, Fourth District.
June 30, 1999.
Rehearing Denied September 27, 1999.
*60 Patrick J. Casey of Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, for appellant.
Marshall J. Osofsky of Lewis, Vegosen, Rosenbach, Silber & Dunkel, P.A., West Palm Beach, for appellee Stanford Cohan.
GROSS, J.
Patrick Casey appeals a detailed final judgment finding him liable on a promissory note. He also appeals a final order assessing attorney's fees and costs pursuant to an attorney's fee provision in the note. We affirm.
In stating the facts of the case, we are mindful of the great deference accorded to the trial judge's findings of fact. See Ferry v. Abrams, 679 So.2d 80 (Fla. 5th DCA 1996). In a non-jury trial, it is the obligation of the trial judge to reconcile conflicts, to determine the credibility of witnesses, and to evaluate the reasonableness and weight of the evidence presented. See Citibank, N.A. v. Julien J. Studley, Inc., 580 So.2d 784, 785-86 (Fla. 3d DCA 1991). An appellate court must accept "a determination of facts made by the trial judge where the record discloses testimony from which the trial judge could have determined the facts...." Pergament v. Pergament, 117 So.2d 26, 29 (Fla. 2d DCA 1959).
In 1986, appellee Stanford Cohan entered into an agreement to sell one half of the common stock he owned in the Palm Beach Lakes Bank. The purchasers under the agreement were twelve persons affiliated with the law firm Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell ("Boose, Casey"). Appellant Casey was one of these purchasers. On December 16, 1986, Cohan executed a letter of intent with the twelve purchasers, which provided for extensive due diligence procedures. The purchasers hired experts to assist them with the due diligence review. Closing occurred on February 9, 1987. Casey's portion of the stock purchase was $40,750.00. Casey paid $18,287.50 in cash and executed a purchase money note for $22,462.50. Cohan held the stock as security under a security agreement. After additional payments, in 1990, Casey refinanced the 1987 note by executing a secured term note to Cohan in the amount of $14,975.00.
After the closing, Boose, Casey represented the bank in legal matters, earning at least $387,000 in fees. In 1991, the bank was seized by the Federal Deposit Insurance Corporation. From that date forward, the common stock Casey had purchased was valueless.
Among the members of the purchasing group in 1986 was Michael Gordon, who was "of counsel" to Boose, Casey and paid as its employee. Gordon was intimately involved in the stock transaction as the attorney for the purchasers. Gordon handled all of the purchasers' negotiations with Cohan. It was Gordon who first approached Cohan about joining forces with Boose, Casey in the operation of the bank. Gordon first met Cohan in the early 1980's and performed legal work for him before joining Boose, Casey.
On December 1, 1986, Gordon and Cohan entered into an agreement which they did not disclose to any of the purchasers. Entitled "personal and confidential," the letter agreement provided that Gordon was entitled to compensation "for services rendered" in an amount not less than $150,000; that Cohan would pay Gordon $75,000 upon the sale of his common stock in the bank to the purchasing group; that Cohan would make a second $75,000 payment upon Cohan's sale of his remaining common stock or the conversion of certain preferred stock, whichever occurred first; *61 and that if Cohan sold his remaining stock, Gordon was entitled to receive fifty percent of the sales price over $10.00 per share. Although the purchasers argued at trial that the bank was the client for Gordon's past legal work, Gordon testified that he performed most of the legal work for Cohan, in furtherance of Cohan's interest as the majority shareholder in the bank. The trial court found that in the agreement "Cohan agreed to pay" $75,000.00 out of the proceeds from the sale of bank stock "for past due legal fees to Gordon for legal services performed by Gordon before he became an employee of Boose, Casey. Casey first learned of this secret agreement in 1992.
In 1992, Cohan filed suit against Casey for the latter's failure to pay off the 1990 note. Casey's affirmative defenses asserted a fraud, the failure to disclose the secret letter agreement between Cohan and Gordon. Casey filed a counterclaim for rescission of the stock purchase agreement and the 1990 note based on the nondisclosure of the secret agreement.
After a non-jury trial, the trial court made findings of fact, which included the following:
The stock purchasers, including CASEY, all engaged in substantial due diligence and had the Stock Purchase Transaction, as well as the financial records of THE BANK, reviewed by lawyers, accountants, and independent financial advisors, and there was no showing that COHAN failed to disclose any material fact relevant to the financial condition of THE BANK or that the Stock Purchase Transaction was anything other than an arm's length transaction,
There is no showing that GORDON was acting as COHAN'S agent in any of the relevant transactions, so no actions of GORDON may be imputed or charged to COHAN.
There is no causal relationship between the existence and nondisclosure of the GORDON Agreement and the receivership of THE BANK by the FDIC.
As one reason for denying relief to Casey, the trial court ruled that the secret agreement "was not a material fact of the transaction, as there was no showing that its existence in any way effected [sic] the value of THE BANK stock sold." The trial court entered judgment for Cohan on the principal due on the 1990 note, along with prejudgment interest and late charges.
Both Casey's affirmative defenses and the counterclaim for rescission turned on the existence of fraud in Cohan's nondisclosure of the letter agreement with Gordon.
This case is controlled by Pryor v. Oak Ridge Development Corp., 97 Fla. 1085, 119 So. 326 (1928). In that case, R.E.L. Pryor obtained an option to purchase real property for $83,700. To finance the purchase, Pryor organized a corporation. He was a stockholder in the corporation and represented it "in consummating the purchase of the lands." Id. at 327. Pryor told the other stockholders that "the lands could not be purchased for less than $83,700" and made "false statements in regard to commissions which he was to receive...." Id. at 327, 328. Pryor procured one of the owners of the property "to make the same statement to one of the stockholders of the corporation prior to the closing of the deal...." Id. at 327. What Pryor and the owner withheld from the stockholders was information similar to that withheld in this case:
[I]n truth and in fact, the said R.E.L. Pryor was to receive a sum of money, and did receive a large sum of money, as his commission, and also received certain notes as commission, all of which he retained and did not divulge to the corporation or its stockholders.
Id. After the sale of the property to the corporation was consummated, the corporation and stockholders filed a bill of complaint seeking rescission of the real estate transaction.
*62 The supreme court in Pryor held that a cause of action for rescission based on fraud would not lie, giving a number of reasons, some of which are applicable to this case.
First, the supreme court noted that the owner/seller of the property was not acting in any fiduciary capacity for the purchasers, and that he was therefore under "no legal obligation to advise the vendees whether or not commissions would be paid by the vendors." Id. at 328. This is consistent with recent cases holding that nondisclosures of fact do not establish a defense or cause of action for fraudulent misrepresentation in a commercial transaction. See Green Acres, Inc. v. First Union Nat'l Bank of Florida, 637 So.2d 363 (Fla. 4th DCA 1994); Wasser v. Sasoni, 652 So.2d 411 (Fla. 3d DCA 1995). As a pure nondisclosure case, this case presents a less egregious fact pattern than Pryor, which involved misrepresentation about the existence of a commission.[1] This is also not a case where an exception to the rule of caveat emptor applies, when "a party undertakes to disclose facts and fails to disclose the whole truth." See Green Acres, 637 So.2d at 364; Ramel v. Chasebrook Constr. Co., 135 So.2d 876, 882 (Fla. 2d DCA 1961).
Second, as the trial judge ruled, the secret agreement was not "a material fact of the transaction." One aspect of fraud is that there be misrepresentation or concealment of a "material fact." See Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053, 1055 (Fla. 4th DCA 1999); Billian v. Mobil Corp., 710 So.2d 984, 990 (Fla. 4th DCA 1998). A concealed fact is material to a transaction if a contract would not have been entered into but for the concealment. See Morris v. Ingraffia, 154 Fla. 432, 18 So.2d 1, 3 (1944); Billian, 710 So.2d at 990; Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328, 1332 (Fla. 2d DCA 1985). Another aspect of materiality is that the concealed fact "must affect the value of the property or cause loss to the purchaser." Pryor, 119 So. at 329. The supreme court in Pryor discussed this second aspect of the materiality of a misrepresentation in a case where fraudulent misrepresentation was the basis for seeking rescission:
The last element of a misrepresentation, in order that it may be the ground for any relief, affirmative or defensive, in equity or at law, is its materiality. The statement of facts of which it consists must not only be relied upon as an inducement to some action, but it must also be so material to the interests of the party thus relying and acting upon it, that he is pecuniarily prejudiced by its falsity, is placed in a worse position than he otherwise would have been. The party must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the misrepresentation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral. If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable.
119 So. at 329 (quoting II Pomeroy Equity Jurisprudence § 898); see Sutton v. Gulf Life Ins. Co., 138 Fla. 692, 189 So. 828, 829 (1939).
*63 In Pryor, the supreme court found that the misrepresentation about the commission was not material because it did not affect the value of the land purchased. "Had the statement made been true, the fact would have added nothing to the value of the land, and that it was false took nothing from the value of the land." Pryor, 119 So. at 328-29. There was no allegation that the buyers had been deceived "as to any existing fact regarding the location, condition, or title to the lands which would in any wise affect its value," nor was there any contention that "the price at which the land was purchased was excessive, or not a fair price at the time and place of the purchase and sale." Id.; Hillcrest Pacific, 727 So.2d at 1056-57.
Similarly, in this case, the trial judge found that the value of the stock sold was not impacted in any way by the failure to disclose the secret agreement between Cohan and Gordon; also, the court found "no causal relationship between the existence and nondisclosure of the Gordon agreement and the receivership of THE BANK by the FDIC...."
Pryor thus requires that we affirm the trial court's final judgment. In doing so we do not pass on what remedies Casey might have against Gordon. See Pryor, 119 So. at 328 ("If [R.E.L. Pryor] did so deceive his principal and associates and did receive a secret profit, their remedy is at law or by a suit in equity for an accounting, and not by a suit in equity to rescind the contract....")
We also affirm the award of attorney's fees. Cohan's defense against the rescission counterclaim was a "cost of collection" within the meaning of the attorney's fee provision of the note. The same allegations of fraud formed the basis for the affirmative defenses and the counterclaim. An important aspect of the relief sought in the counterclaim was to avoid liability on the note. To collect on the note, Cohan had to defeat the counterclaim. See Fleming v. Peoples First Fin. Sav. and Loan Ass'n, 667 So.2d 273 (Fla. 1st DCA 1995); Erickson Enters., Inc. v. Louis Wohl & Sons, Inc., 422 So.2d 1085 (Fla. 3d DCA 1982). The requirement of Sholkoff v. Boca Raton Community Hospital, Inc., 693 So.2d 1114, 1118 (Fla. 4th DCA 1997), that an attorney's fee provision in a contract "clearly identify the matter in which the attorney's fees are recoverable" is satisfied by the language of the note, which provides:
Maker further agrees to pay all costs of collection, including a reasonable attorneys' fee, in case the principal of this Note or any payment on the principal or any interest thereon is not paid at the maturity hereof.
As to other issues raised, there was testimony at the hearing that supported the trial court's finding that Cohan and his attorneys "did not agree to limit fees to 25% of the actual recovery." The court correctly assessed prejudgment interest from the date of the final judgment until the date the amount of the fee was fixed. The final judgment was the determination which triggered Cohan's entitlement to attorney's fees. See Bremshey v. Morrison, 621 So.2d 717 (Fla. 5th DCA 1993). We affirm the final judgment in all respects, except we remand to allow the trial court to address what appears to be a clerical error in the order taxing attorney's fees and costs. As part of the calculation, the trial court awarded 32.64 hours of Mr. Shepard's time at a rate of $135 per hour; however, the court computed the amount due to be $17,906.00 instead of $4,406.40. We cannot be certain from the record whether the trial court erred in its determination of the hours worked or in its multiplication to arrive at the total amount of the bill.
TAYLOR, J., and SCHACK, LARRY, Associate Judge, concur.
NOTES
[1] Cohan warranted in the stock purchase agreement that he had "not engaged any finder or broker in connection with the transaction described herein." Although it was hotly contested at trial, the trial court found that the payment to Gordon was not for his services as a finder or broker, but for legal services rendered prior to the negotiations for the stock sale.