## JARROUJ v LJS REALTY, INC., etc.

### Case No. 86-18852 (04)

Eleventh Judicial Circuit, Dade County

July 31, 1987 and July 7, 1988

### APPEARANCES OF COUNSEL

**Malcolm B. Wiseheart, Jr., Wiseheart & Joyce, P.A.,** for defendant/counter-plaintiff.

**Robert C. Lane,** for plaintiff/counter-defendant.

### OPINION OF THE COURT

JAMES C. HENDERSON, Circuit Judge

### *PARTIAL FINAL SUMMARY JUDGMENT AS TO PLAINTIFF'S COMPLAINT AND DEFENDANT'S COUNTERCLAIM*

THIS CAUSE came on to be heard before me on June 25, 1987,

10

upon the Motion for Summary Judgment filed by Defendant/Counter-plaintiff, LJS REALTY, INC., a Florida corporation d/b/a ONE STOP DISCOUNT, and upon the Motion for Summary Judgment filed by Plaintiff/Counter-defendant, MARWAN JARROUJ, and the Court having reviewed the pleadings and depositions in the Court file, and having heard argument of counsel, and it appearing that the uncontroverted facts relating to the Plaintiff's Complaint and the Defendant's Counterclaim are as follows:

## UNCONTROVERTED FACTS

1. The premises constituting the locale where the parties' dispute arose consisted of a "flea market" containing approximately one hundred fifty (150) "booths" or "stalls" occupied by individual merchants who sold second-hand and new merchandise to members of the public.

2. The said "booths" or "stalls," in turn, consisted of temporary structures of metal bars which could be covered with canvass or plastic sheets. None of the "booths" or "stalls" within the "flea market" had plumbing or individual telephones.

3. The Plaintiff, as Tenant, had rented one or two "booths" or "stalls" from the Defendant, as Landlord, pursuant to a written Lease Agreement, dated June 14, 1985; the Lease was signed by both parties.

4. The said Lease Agreement specifically provided in Paragraph Ten as follows:

The prompt payment of each installment for said leased space upon the dates named, and the faithful observance of the rules and regulations printed upon this Lease Agreement, or which are hereby made part of this covenant, and of such other and further rules or regulations as may be hereafter made by the Landlord, are the conditions upon which this Lease Agreement is made and accepted and any failure on the part of the Tenant to comply with the terms of said Lease Agreement, or any of said rules and regulations now in existence, or which may be hereafter prescribed by the Landlord shall at the option of the Landlord, work a forfeiture of this Lease Agreement, and all of the rights of the Tenant hereunder, and thereupon the Landlord, his agents or attorneys, shall have the right to enter said premises, and remove all persons therefrom forcibly or otherwise, and the Tenant thereby expressly waives any and all notice required by law to terminate this Lease Agreement and specifically any demand notice as to unpaid rents provided for by Florida Statutes and also waives any and all legal proceedings to

recover possession of said premises, and expressly agrees that in the event of a violation of any of the terms of this Lease Agreement, or of said rules and regulations, now in existence, or which may hereafter be made, said Landlord, his agent or attorney, may immediately re-enter said premises and disposes Tenant without legal notice or the institution of any legal proceedings whatsoever.

5. The Plaintiff seeks recovery from Defendant due to the Defendant's alleged exercise of the "self-help" remedies reserved by Defendant in the said Lease; the Plaintiff alleges specifically that on January 5, 1986, Defendant dispossessed the Plaintiff from Plaintiff's "stall" or "booth" without legal process and that Defendant placed Plaintiff's merchandise in storage. Plaintiff admits that the merchandise was collected by him on March 13, 1986, but claims that $2,290.50 of his merchandise was "missing." Plaintiff seeks recovery not only for the $2,290.50 but for "loss of profits," "punitive damages", and "attorney's fees" as a result of Defendant's conduct.

6. Defendant filed a Counterclaim against Plaintiff for back rent in the amount of $1,561.87, but for the purpose of its Motion for Summary Judgment reduced its claim to $1,115.62, representing the agreed rent for one-half (½) of the month of October, 1985, and the months of November and December, 1985. Defendant filed an Affidavit in support of its claim for rent; no affidavit in opposition was filed by Plaintiff/Counter-defendant.

7. With regard to Defendant's Counterclaim, Plaintiff raised the Affirmative Defenses of "Illegality of Contract" and "Payment;" however, by "Illegality of Contract," the Plaintiff/Counter-defendant refers only to the "self-help" provisions of the Lease, there being no suggestion of illegal purpose in leasing the "booth" or "stall" either on the part of Plaintiff or Defendant. By "Payment," Plaintiff/Counter-defendant does not claim that all rent under the parties' Lease as written was ever actually paid; instead, Plaintiff/Counter-defendant claims, as indicated by his deposition, that he paid only some of the rent required but that the remaining unpaid rent was allegedly forgiven by a gratuitous and oral modification of the Lease.

8. The Lease provides in paragraph twenty-eight (28), "This Lease Agreement may not be altered except by written agreement."

9. The Lease also provides in paragraph twelve (12) that the Tenant shall pay "reasonable attorney's fees" upon "any of [the] rental that may be collected by suit or by attorney, after the same is past due;" however, the Lease makes no reciprocal provision for payment of attorney's fees by the Landlord to the Tenant under any circumstances.

12

AND BASED upon the foregoing uncontroverted facts, the Court enters the following legal conclusions:

## CONCLUSIONS OF LAW

1. The law to be applied in this case, based upon its unique facts and circumstances, is the particular law of "stall holders" within "market places." See, e.g., 52 *American Jurisprudence, Second Edition, Markets and Marketing,* particularly, § 12, "Rights and Liabilities of Stall Holders."

2. FS § 83.05, which is generally applicable to such usual commercial premises as stores, offices and warehouses, is not applicable to the facts of this case. See, e.g., *Adelhelm v Dougherty* 176 So. 775 (Fla. 1937); *Ardell v Milner,* 166 So.2d 715 (Fla. 3d DCA 1964); and *Van Hoose v Robbins,* 165 So.2d 109 (Fla. 2d DCA 1964). See also, FS § 2.01.

3. A "self-help" provision, which can be exercised peaceably and which is contained in a lease for a "booth" or "stall" within a "flea market," does not necessarily offend the public policy of Florida.

4. In this case, the Lease, which was signed by both parties, constituted consent to the terms thereof, as a matter of law, and specifically consent to re-entry by the Landlord as provided therein. See, *Baumwald v Treasure Isle Motel, Inc.,* 177 So.2d 252 (Fla. 3d DCA 1965); *Rodeway Inns of America v Alpaugh,* 390 So.2d 370 (Fla. 2d DCA 1980); and *S. H. Kress & Company v Desser & Garfield, Inc.,* 193 So.2d 192 (Fla. 3d DCA 1966).

5. No legal basis has been demonstrated in this case for an award of punitive damages or for an award of attorney's fees in favor of the Plaintiff and against the Defendant. The Lease provides for attorney's fees in favor of the Landlord and against the Tenant, in the event of the Tenant's default. See, Paragraph 18 of the Lease.

6. With respect to the Defendant's Counterclaim for rent, Plaintiff has neither shown nor alleged any illegality of contract as would defeat Defendant's right to recover rent under the parties' Lease. Moreover, even if Plaintiff's allegations as to modification of the Lease could be substantiated, same could not constitute a valid modification of the Lease as a matter of law inasmuch as the Lease specifically provides that modifications may be made only in writing and inasmuch as Plaintiff has failed to show or allege that the purported modification was supported by any consideration flowing from the Plaintiff. See, *Williams v Peninsular Co.,* 75 So.2d 527 (Fla. 1917); *Manufacturers & Trader's Trust Co. v The First National Bank,* 113 So.2d 869 (Fla. 2d DCA 1959); and *Dobbs v Petko,* 207 So.2d 11 (Fla. 4th DCA 1968).

13

AND BASED upon the foregoing uncontroverted facts and the foregoing conclusions of law, it is therefore

ORDERED AND ADJUDGED as follows:

1. That the Defendant's Motion for Summary Judgment be, and it is hereby, granted and Summary Judgment be, and it is hereby entered, in favor of Defendant, LJS REALTY, INC., and against Plaintiff, MARWAN JARROUJ, as to all claims contained in Plaintiff's Complaint, except for Plaintiff's claim for conversion of personal property, which claim shall remain standing subject to proof by the Plaintiff that such conversion occurred, that the Defendant committed such conversion, and the amount of resulting damages.

2. That the Defendant's Motion for Summary Judgment be, and it is hereby, also granted on Defendant's Counterclaim and that Summary Judgment be, and it is hereby, entered in favor of Defendant/Counterplaintiff, LJS REALTY, INC., and against Plaintiff/Counter-defendant, MARWAN JARROUJ, as to the issue of Plaintiff's liability for rent and attorney's fees as set forth therein and that Defendant's Counterclaim for rent and attorney's fees shall be scheduled for Trial on the issue of damages only.

3. That the Plaintiff's Motion for Summary Judgment be, and it is hereby, denied.

DONE AND ORDERED at Miami, Dade County, Florida, this 31st day of July, 1987.

---

## OPINION OF THE COURT

MARY ANN MacKENZIE, Circuit Judge.

### FINAL JUDGMENT

THIS CAUSE came on to be heard before me on May 31, 1988 for Non-Jury Trial upon the Complaint filed by Plaintiff, MARWAN JARROUJ, and the Counterclaim filed by Counter-Plaintiff, LJS REALTY, INC., a Florida corporation, and the Court having heard argument of counsel and testimony of the witnesses, the Court finds the facts relating to this matter to be as follows:

### FINDINGS OF FACT

1. At the time of the parties' dispute, Defendant/Counter-Plaintiff, LJS REALTY, INC., a Florida corporation, was the owner of a "flea market" containing approximately one hundred fifty (150) "booths" or

14

"stalls" occupied by individual merchants who sold second-hand and other merchandise to members of the public.

2. The said "booths" or "stalls," in turn, consisted of temporary structures of metal bars which could be covered with canvas or plastic sheets. None of the "booths" or "stalls" within the "flea market" had plumbing or individual telephones.

3. The Plaintiff/Counter-Defendant, MARWAN JARROUJ, also known as MARWAN JARROUGE and MARWAN MICHAEL JARROUGE, rented one or two "booths" or "stalls" from the Defendant/Counter-Plaintiff, pursuant to a written Lease Agreement dated June 14, 1985.

4. The business operated by the Plaintiff/Counter-Defendant consisted of the retail sale of blue jeans, shirts and other items of clothing to members of the public; in practice, most of the sales were to persons of low income.

5. The Plaintiff/Counter-Defendant had not operated any similar business before and had no particular previous experience as a proprietor.

6. The business was operated by the Plaintiff/Counter-Defendant as a sole proprietorship.

7. The Plaintiff/Counter-Defendant's business was operated without the benefit of an accountant or professional bookkeeper or bookkeeping service.

8. During the entire period of the Plaintiff/Counter-Defendant's business operations, namely, from July 1, 1985 to early January, 1986, Plaintiff/Counter-Defendant filed no Florida Sales Tax returns. Neither did Plaintiff/Counter-Defendant prepare or file with the appropriate authorities, unemployment compensation reports, social security and withholding tax returns, estimated federal income tax returns, or any other government report.

9. Plaintiff/Counter-Defendant did file an individual income tax return (Internal Revenue Service form 1040-EZ) with respect to the year 1985. The total income which Plaintiff/Counter-Defendant reported for that year was $280.00, no part of which included income from the Plaintiff/Counter-Defendant's business operated from the demised premises.

10. No physical inventories of the stock held by the Plaintiff/Counter-Defendant were ever made or recorded on a regular basis.

11. While there were some financial records kept as a favor by a

15

friend of the Plaintiff/Counter-Defendant, such records were not composed of entries regularly or systemically made in accordance with any known accounting method and, accordingly, failed to provide a reasonable basis for accurately assessing the income and expenses of the Plaintiff/Counter-Defendant's business.

12. Plaintiff/Counter-Defendant began having difficulties in making his rental payment as early as August, 1985; Defendant/Counter-Plaintiff allowed the Plaintiff/Counter-Defendant one month's free rent as a concession with respect to the month of August, 1985 and also allowed one-half month's rent in concession with respect to the month of October, 1985; nevertheless, by November 1, 1985, Plaintiff/Counter-Defendant was indebted to the Defendant/Counter-Plaintiff in the amount of $669.37 and, as of December 1, 1985 owed the Defendant/Counter-Plaintiff the sum of $1,115.62.

13. During the latter part of the year 1985, the Plaintiff/Counter-Defendant, by his own testimony, had formed the intention of abandoning the premises and was actively seeking another location, notwithstanding the fact that his Lease with the Defendant/Counter-Plaintiff would not expire until June 30, 1986.

14. By the first week in January, 1986, Plaintiff/Counter-Defendant had ceased business operations and did, in fact, abandon the demised premises, leaving behind an unascertained amount of blue jeans, shirts and other merchandise. Defendant/Counter-Plaintiff placed these items in a more secure location elsewhere on the same business premises.

15. The Plaintiff/Counter-Defendant came to collect his personal property later in the same month and same was made available to him to examine; however, there arose a dispute concerning the wording and the accuracy of the initial draft of a proposed receipt and the Plaintiff/Counter-Defendant left the premises without signing same, or submitting any proposed receipt of his own, and without taking his personal property with him. On March 13, 1986, the Plaintiff/Counter-Defendant returned again to the premises and collected all of the merchandise which he had left behind and this time signed a receipt for same.

16. While the Plaintiff/Counter-Defendant claimed that there had been a diminution in the value of the blue jeans and other clothing between January and March of 1986 reflective of an alleged a change of style and consumer buying habits between those dates, the Court was presented with no credible evidence to support the Plaintiff/Counter-Defendant's contentions in this respect.

17. While the Plaintiff/Counter-Defendant claimed that there were other items of personal property which he had left behind but which

**16**

were not ever returned to him, the Court was presented with no credible evidence which would support the Plaintiff/Counter-Defendant's contentions in this respect.

18. The Court finds specifically that all of the items of personal property which were left behind by the Plaintiff/Counter-Defendant during the first week in January, 1986 were, in fact, returned to the Plaintiff/Counter-Defendant by March 13, 1986 and that the Defendant/Counter-Plaintiff was, at all times, willing to return such items of personal property to the Plaintiff/Counter-Defendant in exchange for a proper receipt.

19. Finally, the Court finds that the Plaintiff/Counter-Defendant has failed to present any credible evidence to show that any damages in an ascertainable amount were sustained by the Plaintiff/Counter-Defendant as a result of any wrongful acts or omissions of the Defendant/Counter-Plaintiff.

## CONCLUSIONS OF LAW

Counsel for both parties have placed great emphasis on the Partial Final Summary Judgment as to Plaintiff/Counter-Defendant's Complaint. The said Partial Final Summary Judgment basically was bottomed on the theory that a "self-help" provision contained in a lease for a "booth" or "stall" within a "flea market" does not necessarily offend the public policy of Florida provided that same can be exercised peacefully and that the alleged exercise of "self-help" in the circumstances of this case was not actionable. Counsel have taken divergent views with regard to the proper effect which should be afforded to the said Partial Final Summary Judgment. Counsel for the Plaintiff/Counter-Defendant has insisted that the Partial Final Summary Judgment, which was entered by a predecessor judge, is so clearly erroneous that same can be entirely disregarded or should be disregarded to the extent possible by this Court. Counsel for the Defendant/Counter-Plaintiff, on the other hand, has contended that the said Partial Final Summary Judgment not only constitutes the law of the case but virtually precludes any recovery by the Plaintiff/Counter-Defendant against the Defendant/Counter-Plaintiff and virtually eliminates the need to take testimony as to the parties' dispute. The Court has accepted neither provision. Instead, the Court permitted each party to call whatever witnesses such party desired and to be heard on any issue such party has wished. In light of the testimony received, the Court, as stated above, has found that the Plaintiff/Counter-Defendant, in fact, intended to and did abandon the premises prior to the events described in the Plaintiff/Counter-Defendant's Complaint. The Court has also

17

found that the Plaintiff/Counter-Defendant has failed to establish or prove damages. These findings render it unnecessary to consider the effect of the Partial Final Summary Judgment previously entered in this cause. The applicable principles of law and this Court's conclusions of law which govern this case are instead as follows:

1. Plaintiff/Counter-Defendant breached the parties' Lease by failure to pay rent and by abandoning the premises prior to the expiration of the parties' Lease.

2. A tenant who has abandoned the demised premises has no basis to claim a wrongful eviction with respect to the actions taken by his landlord after the tenant's abandonment.

3. No recovery is available where the landlord assumes possession of personal property left behind after a tenant abandons the premises.

4. There is no conversion where the detention or failure to deliver goods is not accompanied by a refusal to deliver.

5. There is no conversion where a temporary refusal to deliver goods is based upon a reasonable qualification or requirement or a good faith dispute as to whether the proposed receipt accurately reflects the items to be delivered.

6. No recovery is available where damages have not been sustained or proven.

7. A tenant who abandons the demised premises is liable for the rent which has accrued prior to the tenant's abandonment.

8. A default tenant who abandons the premises is not entitled to the return of advance rent.

Based on the foregoing Findings of Fact and Conclusions of Law, it is

ORDERED AND ADJUDGED as follows:

1. That Final Judgment be, and it is hereby, entered in favor of Defendant, LJS REALTY, INC., a Florida corporation, and against Plaintiff, MARWAN JARROUJ a/k/a MARWAN JARROUGE a/k/a MARWAN MICHAEL JARROUGE, with respect to Plaintiff's Complaint and that the said Plaintiff shall take nothing by his Complaint.

2. That Final Judgment be, and it is hereby, entered in favor of Counter-Plaintiff, LJS REALTY, INC., a Florida corporation, and against Counter-Defendant, MARWAN JARROUJ a/k/a MARWAN JARROUGE and a/k/a MARWAN MICHAEL JARROUGE, with

18

respect to the Counter-Plaintiff's Counterclaim and that the Counter-Plaintiff, LJS REALTY, INC., a Florida corporation, have and recover from Counter-Defendant, MARWAN JARROUJ a/k/a MARWAN JARROUGE a/k/a MARWAN MICHAEL JARROUGE, the sum of $1,115.62, for which let execution issue.

3. That the Court shall reserve jurisdiction for the purpose of awarding attorneys' fees and costs to the Defendant/Counter-Plaintiff, LJS REALTY, INC., a Florida corporation.

DONE AND ORDERED in Chambers, at Miami, Dade County, Florida, this 7th day of July, 1988.