PER CURIAM.
Appellant/defendant-cross-defendant, Northwestern National Insurance Co. (Northwestern), takes this consolidated appeal from a final judgment rendered in favor of appellee/plaintiff, General Electric Credit Corp. (General Electric), and appel-lees/ defendants-cross-plaintiffs, Eugene and Shirley Celia (Celias); and from a post final judgment order on attorney’s fees. The Celias have cross-appealed from the final judgment.
In sum, the final judgment ordered that Northwestern, the insurers of a boat owned by the Celias, pay General Electric, as assignees of a first preferred ship mortgage on said boat, the sum of THIRTY-ONE THOUSAND, THREE HUNDRED and SEVENTY-SEVEN DOLLARS and EIGHTY-ONE CENTS ($31,377.81) plus interest, costs and attorney’s fees, as a result of the boat’s destruction. The final judgment further ordered that Northwestern pay the Celias, as the insureds-owners-mortgagors of the boat, the amount of FORTY-FOUR THOUSAND, ONE HUNDRED DOLLARS ($44,100.00) less the recovery of General Electric, plus interest, costs and attorney’s fees.
The post final judgment order on attorney’s fees awarded General Electric the sum of TWELVE THOUSAND, FIVE HUNDRED DOLLARS ($12,500.00) against the Celias as attorney’s fees and further ordered that the Celias be indemnified by Northwestern in like amount. Additionally, the court ordered that the Celias could recover from Northwestern their own reasonable attorney’s fees in the amount of SEVENTEEN THOUSAND, FIVE HUNDRED DOLLARS ($17,500.00).
From the judgment, the Celias have taken a cross-appeal wherein they claim that the amount of coverage on their boat, vis a vis the policy of insurance issued to them by Northwestern, was SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), and not FORTY-FOUR THOUSAND, ONE HUNDRED DOLLARS ($44,100.00), as determined by the trial judge, and being the actual purchase price of the boat. As we surmise from the findings of fact and conclusions of law, the trial judge determined that it was the intent of the Celias to insure the boat for the purchase price only, notwithstanding the fact that premiums were actually paid by them and accepted by Northwestern for the increased coverage, and further determined that to rule that coverage was available in the amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) would “in good conscience and good faith” be tantamount to awarding the Celias a “windfall.”
As for the final judgment, it is Northwestern’s position that any boat insurance *122 that it had issued to the Celias was void in that (1) Eugene Celia had intentionally concealed and/or misrepresented material facts concerning his background when applying for the boat insurance that were relevant to the risk sought to be insured; (2) the insureds had participated in a conspiracy to import illicit drugs into this country, utilizing the boat in a smuggling operation, in contravention of the “pleasure boat” condition of the issued policy; and (3) the boat was intentionally destroyed by one of the co-conspirators during an unsuccessful drug run.
As for the post-final judgment order on attorney’s fees, Northwestern contends that even if coverage is available to appellees, the trial judge erred in (1) awarding excessive fees to the Celias and (2) awarding any fees to General Electric in that it was but a plain law loss payee, and not an insured or named beneficiary under a policy of insurance pursuant to Section 627.428, Florida Statutes (1977) and General Electric Credit Corporation v. Fidelity & Casualty Company of New York, 344 So.2d 1284 (Fla. 4th DCA 1977).
After carefully reviewing the record, briefs and counsel’s arguments, it is our opinion that the acts of the Celias voided any coverage afforded them by virtue of the policy of insurance issued by Northwestern. Accordingly, the final judgment is reversed. Our decision moots the cross-appeal of the Celias. Additionally, in that we hold that no coverage existed, it was error to award attorney’s fees to appellees. Accordingly, the post-final judgment order is likewise reversed.
As succinctly as possible, the facts of the case as shown by the record are as follows. On June 19, 1974, the yacht “Tempest” was sold by Allied Marine Corporation to the Celias. The purchase was arranged by a Mr. Ben Farrow, a yacht salesman, who procured the transfer of the then existing insurance on the yacht from its former owner to the Celias. The transfer of the insurance was effected by telephone conversation between Farrow and a Mr. Kenneth A. Smith, an insurance agent. During the conversation, various questions were asked by Smith directly to Eugene Celia concerning the “risk” involved. Celia never advised Smith that he had a prior criminal record.
As part of the financing of the yacht, a ship’s mortgage was taken out between the buyers, the Celias, and the sellers, Allied Marine Corporation. The mortgage was later assigned to General Electric. The whole transaction, including the sale, financing and transfer of insurance was effectuated with great dispatch at the urging of Eugene Celia.
The purchase price of vessel was approximately FORTY-FOUR THOUSAND DOLLARS ($44,000.00) with a TWENTY THOUSAND DOLLAR ($20,000.00) payment having been made in cash by Shirley Celia. Both the Celias had been unemployed during the year previous to the purchase of the yacht. In order to obtain the ship’s mortgage, Eugene Celia had to complete a personal financial statement. Said statement revealed that Eugene Celia had cash on hand in the approximate amount of SIXTY-FOUR THOUSAND DOLLARS ($64,000.00), notes receivable in the amount of ONE HUNDRED TWENTY-FOUR THOUSAND DOLLARS ($124,000.00), assets of over TWO HUNDRED THOUSAND DOLLARS ($200,000.00), a salary of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) and income of TWENTY-FOUR THOUSAND, SIX HUNDRED FIFTY DOLLARS ($24,650.00). None of this information given by Eugene Celia was, in fact, correct. In addition, a withholding tax slip (W — 2 form) submitted by Celia in connection with the financial information was admittedly falsified in order to obtain the credit to finance the yacht.
When delivery was finally taken on the yacht, Mr. Celia was met at the yacht by Richard Cravero, Bobby Miller and Ronald Paterno. Cravero had- inspected the yacht on three or four occasions prior to the closing of the sale, and Paterno had been designated as the yacht’s “captain” in that the Celias had no experience in operating such a vessel.
*123 Two days after the closing, on June 21, 1974, the yacht was spotted in Bahamian waters by the crew of a Bahamian gun boat. Although the yacht was not searched, the persons aboard were instructed to proceed to the Island of Bimini where the passengers filled out immigration cards. The cards reflected that the passengers aboard the yacht were Ronald Clifford Chandler, Phil Siegal, Miller and Paterno, all alleged members of a group frequently referred to as the Cravero gang. The Cel-ias were not on the yacht.
During this time, Cravero and a government undercover agent were aboard the vessel “Yankee Clipper,” which had been rented from Pier 66, Fort Lauderdale, Florida. Apparently, the two vessels were supposed to rendezvous off the coast of the Bahama Islands for the purpose of transporting cocaine and marijuana into the United States. For some reason, contact was not made and the “Yankee Clipper” returned to the United States without meeting the “Tempest.” The Celias’ yacht returned to the United States with its illicit cargo of drugs.
In the latter part of June, 1974, Cravero, fearing that he was under surveillance boarded the “Tempest” in Jupiter, Florida, and proceeded down the Intercoastal Waterway. Off Jupiter, the yacht ran aground and Cravero and others set the “Tempest” on fire. Prior to the yacht’s destruction, part of the marijuana was unloaded on an adjacent island, the rest burned with the ship.
As previously stated, Northwestern urges reversal on three grounds: first, Northwestern contends the insurance coverage is void by reason of misrepresentation and concealment on the part of Eugene Celia which were material to the risk sought to be covered; second, Northwestern contends that the intentional destruction of the “Tempest” voided the coverage; third, Northwestern argues that the terms of the policy of insurance were violated when the Celias participated in an illegal conspiracy to import drugs.
Needless to say, appellees have responded to all of Northwestern’s contentions. Specifically, as to the point regarding the issue of conspiracy, appellees rely on the trial judge’s findings of fact which, in part, reads that Northwestern “failed to establish a conspiracy involving Eugene J. Celia and/or Shirley A. Celia.” We have specifically set forth the above facts in detail because we reject the learned judge’s finding.
We are fully aware of the weight that must be given to a trial judge’s findings of fact on appeal. Though findings arrive at this court with a presumption of correctness, it is the duty of an appellate court to reverse where a decision is based upon a finding that represents a misapplication of the law governing the facts disclosed. Dixson v. Kattel, 311 So.2d 827 (Fla. 3d DCA 1975); Goldstein v. Goldstein, 310 So.2d 361 (Fla. 3d DCA 1975). It is our opinion that, sub judiee, the trial judge misapplied the law as it governs conspiracy.
While there may have been a dearth of direct testimony linking the Cel-ias to a conspiracy to import illicit drugs into this country, it is well-settled that a conspiracy may be proven by circumstantial evidence. Resnick v. State, 287 So.2d 24 (Fla.1973). Based upon the law, there is little doubt in our minds that it was the intent of the Celias to conspire with the Cravero gang in the purchase of the insured vessel for use in an illegal drug smuggling operation. Obviously, the use of the yacht for such illegal purpose clearly violated the “pleasure boat” provision of the policy of insurance.
Based upon the above, we need not discuss Northwestern’s remaining contentions.
Accordingly, the final judgment and post final judgment order are reversed and remanded for further proceedings consistent herewith.
Reversed and remanded for further proceedings consistent herewith.