503 So.2d 1278 (1987)
Dorothy DONOFRIO, Appellant,
v.
Pasquale MATASSINI, Robert E. Rodriguez, and Howard Bernstein, Appellees.
No. 85-2726.
District Court of Appeal of Florida, Second District.
January 28, 1987.
Rehearing Denied March 11, 1987.
*1279 Stevan T. Northcutt of Levine, Hirsch, Segall, Northcutt & Hanlon, P.A., Tampa, for appellant.
Pasquale Matassini, pro se.
Thomas A. Smith, Tampa, for appellee Rodriguez.
Michael A. Linsky of Linsky, Reiber & Scruggs, Tampa, for appellee Bernstein.
PER CURIAM.
Appellant Dorothy Donofrio, plaintiff below, seeks reversal of the directed verdicts granted in favor of appellees, defendants in the trial court. Because appellant attacks the trial court's entry of directed verdicts, we review and recite the facts in the light most favorable to her.
Throja, Inc. was a Florida corporation which owned one asset, a parcel of commercial real estate located in Tampa, Florida, encumbered by a first mortgage. Appellant Dorothy Donofrio and appellees Pasquale Matassini and Robert E. Rodriguez each owned one-third of the stock in Throja. They were also sole officers and directors of Throja. Throja's parcel of real estate was leased to Deep South Plantation Foods, Inc., which operated a bar on the premises. The stock in Deep South was owned equally by Matassini, Rodriguez, and Donofrio's husband, James.
In late 1973 and early 1974, discord arose among the parties. James Donofrio had been convicted of a felony, and this resulted in the revocation of Deep South's license to sell alcoholic beverages. Without the liquor license, Deep South was unable to make rental payments to Throja which, in turn, was unable to make the mortgage payments on its property. Additionally, the Donofrios had been unwilling to invest capital or work in either Throja or Deep South throughout the existence of these two corporations.
In June 1974, Matassini and Rodriguez formed Hillsborough Investments, Inc., each owning one-half of the stock and being its sole officers and directors.
In July 1974, Matassini and Rodriguez removed Mrs. Donofrio as a director and officer of Throja. Her removal was admittedly motivated by the desire of Matassini and Rodriguez to exclude her from subsequent transactions. In September of that year, Matassini and Rodriguez caused Throja to sell and Hillsborough Investments to buy the real estate owned by Throja on which Deep South had operated the bar. A total purchase price of $110,000 was agreed upon, which included Hillsborough Investments assuming a $14,000 first mortgage, and executing an $88,000 purchase money second mortgage and a $7,400 unsecured note to Throja.
In October 1974, Throja was involuntarily dissolved for failure to file its annual report with the Secretary of State.
Hillsborough Investments made monthly payments on the mortgage to Throja by depositing the monies into a Throja bank account on which Rodriguez and Matassini were the sole signatories. In February 1976, Matassini and Rodriguez caused Throja to purchase two $5,000 certificates of deposit. Thereafter, Matassini and Rodriguez each obtained a $5,000 personal loan, using Throja's certificates of deposit as collateral. These loans were not repaid, and on April 1, 1976, the bank redeemed the certificates of deposit.
In March 1976, Rodriguez sold his shares in Deep South, Throja, and Hillsborough Investments to appellee Howard Bernstein. Bernstein replaced Rodriguez as a director and officer in the three corporations. Thereafter, Hillsborough Investments ceased making payments on its mortgage to Throja. On April 2, 1976, Matassini withdrew about $4,300 which remained in Throja's bank account.
*1280 As a part of the transaction to purchase the corporate shares from Rodriguez, Bernstein approached Joseph Licata, Jr., who is not a party to this appeal. Licata agreed to transfer a liquor license he owned to the property and operate a bar with Bernstein and Matassini. These three then proceeded to arrange for the purchase of the property from Hillsborough Investments. Bernstein had been under the impression that Matassini and Rodriguez were to "take care of" the mortgage to Throja so that Hillsborough Investments would own the real estate free and clear of any obligations. He agreed to complete the purchase provided he could review a title binder. Because the title binder reflected Throja's mortgage as an encumbrance against the property, it was necessary to obtain a satisfaction of that mortgage before Bernstein and Licata would agree to proceed with the transaction. A satisfaction of mortgage was presented by Bernstein and executed on behalf of Throja by Matassini and Rodriguez as its officers. At this point, Rodriguez was apparently no longer an officer of Throja, although he had not yet received remuneration from Bernstein for his shares in Deep South, Throja, and Hillsborough Investments. Later, Rodriguez, on advice of counsel, marked this satisfaction "void," and on April 15, 1976, Matassini executed a new satisfaction as president of Throja. Bernstein witnessed Matassini's signature on the second satisfaction. Bernstein was aware that no money was paid to Throja in exchange for the satisfaction.
On April 20, 1976, Matassini and Bernstein caused Hillsborough Investments to transfer the real estate to Bernstein and his wife, Licata and his wife, and Matassini's son in trust for Matassini. The property was valued at $225,000 for purposes of the sale; however, Bernstein and Matassini paid no consideration. Licata paid $25,000 in cash and transferred his liquor license to the property. The cash was apparently used for repair and improvement of the bar. The owners began operating a bar on the property but it failed, and the property was eventually sold to a third party for $225,000. Net proceeds from this sale were divided among Matassini, the Bernsteins, and the Licatas.
The net effect of the series of transactions was that Mrs. Donofrio, who retained a one-third interest in Throja, received nothing.
Mrs. Donofrio was unaware of these events until 1977. In November of that year, more than three years after dissolution of Throja, she filed her lawsuit for compensatory and punitive damages, alleging the existence of a conspiracy to deprive her of the value of her stock in Throja, and seeking imposition of an equitable lien against the property to compensate her for her loses.
Following several amendments to the initial complaint, the case came on for jury trial in 1985 on the conspiracy theory.[1] At the conclusion of Mrs. Donofrio's case, the trial judge granted a directed verdict in favor of Bernstein on the ground that there was insufficient evidence to show his participation in the alleged conspiracy. Rodriguez and Matassini rested without presenting any evidence. The trial judge granted directed verdicts in their favor on the theory that Mrs. Donofrio's suit was actually a stockholder's derivative claim that by law should have been filed within three years of Throja's dissolution. The judge further ruled that the evidence was insufficient to show Rodriguez and Matassini participated in any alleged conspiracy. On this appeal, Mrs. Donofrio challenges the trial court's entry of these directed verdicts.
Mrs. Donofrio argues that there was sufficient evidence of appellees' participation in the alleged scheme to render her Throja stock worthless to withstand their motions for directed verdict. Additionally, she asserts that she has a personal cause of action against appellees which was timely filed. We agree with her contentions.
We believe the trial court erred in granting motions for directed verdict on the evidence. *1281 Matassini admitted that the reason for removing Mrs. Donofrio as an officer and director of Throja was to force her and her husband out of the business. Hillsborough Investments was created by Matassini and Rodriguez to eliminate any interest the Donofrios had in the bar operated on the premises. Rodriguez and Matassini secured personal loans collateralized by certificates of deposit owned by Throja, resulting in Throja assets being used to pay their personal debts. Moreover, Matassini withdrew the balance of funds remaining in Throja's bank account.
A jury could infer that Rodriguez signed the satisfaction of the Throja mortgage to defraud Mrs. Donofrio in order to receive payment from Bernstein. In addition, Matassini attempted to justify his signing the satisfaction of mortgage on behalf of Throja without receiving consideration by saying he was only getting even with the Donofrios for the loss of Deep South's liquor license and resulting failure of that business.
Turning to the claim against Bernstein, the evidence is conflicting concerning his participation in the alleged conspiracy. Reviewing the evidence in the light most favorable to Mrs. Donofrio, Bernstein testified that at the time he became an officer, director, and stockholder in Throja he was aware of the existence of a controversy between the Donofrios and Matassini and Rodriguez. Matassini told Bernstein that the satisfaction of mortgage was being recorded without consideration to Mrs. Donofrio because of the economic loss to Deep South caused by Mr. Donofrio. Bernstein acted to help secure the satisfaction of mortgage. Thus, there was evidence that Bernstein had direct knowledge of the scheme to deprive Throja of its sole asset which would effectively render Mrs. Donofrio's shares in Throja worthless and that he participated in the scheme. Furthermore, as a result of the satisfaction being issued, Bernstein received an interest in the property unencumbered by the Throja mortgage.
From the evidence presented, a jury could infer Bernstein, Matassini, and Rodriguez participated in a scheme to deny Mrs. Donofrio any compensation for her interest in Throja. A conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators. Karnegis v. Oakes, 296 So.2d 657 (Fla. 3d DCA 1974), cert. denied, 307 So.2d 450 (Fla. 1975). The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence. Northwestern National Insurance Co. v. General Electric Credit Corp., 362 So.2d 120 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 459 (Fla. 1979).
When ruling on a motion for directed verdict, the trial court must evaluate the evidence in the light most favorable to the nonmoving party and must indulge all inferences in that party's favor. Cutchins v. Seaboard Air Line Railroad Co., 101 So.2d 857 (Fla. 1958); see Reinhart v. Seaboard Coast Line Railroad Co., 422 So.2d 41 (Fla. 2d DCA 1982), petition for review denied, 431 So.2d 989 (Fla. 1983). Based on the evidence recited above, we believe Mrs. Donofrio's case was sufficient to withstand appellees' motions for directed verdict grounded on insufficiency of the evidence.
We next address the issue of whether Mrs. Donofrio's action was time barred. As a starting point, we deem her cause of action to have accrued in April 1976. It was then that Throja suffered a loss of the certificates of deposit and corporate funds withdrawn by Matassini, and the satisfaction of mortgage was executed. This latter event caused Throja's interest in the property, which was the corporation's only asset, to vanish and Mrs. Donofrio's stock to be rendered valueless.
The trial court ruled that the suit was time barred on the basis of section 607.297, Florida Statutes (1985), which provides:
The dissolution of a corporation either:
(1) By the issuance of a certificate of dissolution by the Department of State;
(2) By a decree of court; or
(3) By expiration of its period of duration *1282 shall not take away or impair any remedy available to or against such corporation or its directors, officers, or shareholders for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within 3 years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right, or claim. If such corporation was dissolved by the expiration of its period of duration, such corporation may amend its articles of incorporation at any time during such period of 3 years so as to extend its period of duration.
This statute by its terms affects only those claims existing prior to dissolution. As we have observed, Mrs. Donofrio's cause of action accrued in April 1976 when corporate irregularities occurred, which was long after dissolution of the corporation. Consequently, the trial court erred in concluding that Mrs. Donofrio's suit had to have been filed within three years of dissolution of the corporation.
The trial court ruled that Mrs. Donofrio's claim was in the nature of a shareholder's derivative suit and should have been brought on behalf of the corporation. We agree that it was a corporate cause of action. See Alario v. Miller, 354 So.2d 925 (Fla. 2d DCA 1978). Throja, however, was dissolved in 1974, and to have instituted suit on behalf of it, it would have been necessary to reinstate the corporation. See Cosmopolitan Distributors, Inc. v. Lehnert, 470 So.2d 738 (Fla. 3d DCA 1985), review denied, 486 So.2d 596 (Fla. 1986). Section 607.271(5), Florida Statutes (Supp. 1984), provides that any corporation dissolved involuntarily by order of the Department of State "may be reinstated by the Department of State at any time upon approval of an application for reinstatement signed by an officer or director of the dissolved corporation." At the time of Throja's dissolution, Mrs. Donofrio was neither an officer nor a director, having been earlier removed from those positions by Rodriguez and Matassini. Therefore, she had no authority to apply for reinstatement of Throja. Consequently, we hold that Mrs. Donofrio could personally maintain the claim. To rule otherwise would leave Mrs. Donofrio without a remedy and allow Matassini and Rodriguez to take advantage of their removing Mrs. Donofrio as an officer and director of Throja.
We reverse the trial court's judgment and remand for further consideration consistent with this opinion.
GRIMES, A.C.J., and SCHEB and LEHAN, JJ., concur.
NOTES
[1] The property was sold to a third party while the lawsuit was pending. Therefore, the equitable lien theory was not tried.