639 So.2d 1031 (1994)
Cedric M. JAMES and Elizabeth James, et al., Appellants,
v.
NATIONSBANK TRUST COMPANY (FLORIDA) NATIONAL ASSOC., etc., et al., Appellees.
No. 93-1027, 93-1396.
District Court of Appeal of Florida, Fifth District.
July 8, 1994.
*1032 Steven M. Greenburg of Law Offices of Stephen L. Raskin, South Miami, for appellants.
Peter W. Homer and Christopher D. Barber of Greer, Homer & Bonner, P.A., Miami, for appellee Nationsbank Trust Co.
PETERSON, Judge.
In 1986, the appellants purchased homes from General Development Corp. (GDC) and the purchases were financed through GDC's wholly-owned subsidiary, GDV Financial Corporation (GDV). In 1989, the appellee, Nationsbank Trust Company, purchased, as trustee under a pooling agreement, several notes and mortgages held by GDC, including those given by appellants. Shortly after GDC was indicted for criminal fraud, in 1990, appellants stopped paying on their mortgages. In 1991 Nationsbank brought foreclosure actions against appellants and appellants responded with counterclaims and affirmative defenses. The trial court dismissed appellants' counterclaims and defenses and thereafter entered final summary judgments in favor of Nationsbank. In their appeal of the final summary judgments of foreclosure, the appellants assert the trial court erred in dismissing with prejudice their counterclaims and affirmative defenses. We affirm the orders dismissing the counterclaims and striking all affirmative defenses except the affirmative defense relating to the fraud allegedly committed by GDC and GDV at the inception of the note and mortgage.
The appellants claimed that they were fraudulently induced to purchase their homes through a conspiracy to defraud set up by GDC, GDV, and others. The appellants further alleged that Nationsbank became a co-conspirator to the fraud when Nationsbank accepted an assignment of the appellants' notes and mortgages over two years after the purchases. Appellants also alleged as affirmative defenses that Nationsbank should be held liable to them for the acts of GDV, the original mortgagee, because Nationsbank knew of the fraud committed by GDV and GDC and therefore could not assert holder in due course status.
Appellants acknowledge that Nationsbank did not participate in any activity that resulted in the execution and delivery of the notes and mortgages described in the pleadings involved in this appeal. Nevertheless, appellants urge that Nationsbank "knowingly joined the conspiracy" or "knowingly aided and participated in the ... fraud" by purchasing the appellants' notes and mortgages and thereby providing funds that allowed GDC to perpetuate the alleged fraudulent sales scheme upon others. That, appellants argue, is enough to link Nationsbank with GDC's fraudulent scheme and constitutes an adoption of all previous acts by GDC. Appellees cite a host of federal criminal cases for this proposition and three Florida[1] cases.
These cases support the proposition advanced by the appellants that persons joining a conspiracy with knowledge of its general purpose and scope may be held liable for all activity in furtherance of the conspiracy which took place before they joined it. However, in all of the cases cited by appellants, it was quite reasonable and logical to conclude that the acts alleged were in furtherance of the illegal conspiracy. In the instant case appellants allege that Nationsbank made a purchase of a pool of mortgages from GDV on the secondary mortgage market at a point in time when Nationsbank had actual knowledge *1033 of GDC's fraudulent sales scheme. Few further facts are alleged to support the appellants' unusual conclusion that the purpose of the purchase was to join the alleged GDC conspiracy and provide funds for the perpetration of fraud on yet unnamed victims unconnected with appellants' transaction.
In our search for something more than a generalized charge of aiding or abetting or conspiracy, we found only an allegation that Nationsbank at the time it purchased the GDV pool of notes and mortgages was "aware that the only means GDC had of continuing to perpetuate its pattern of fraudulent activities was if lenders such as Nationsbank aided and abetted the conspiracy by providing GDC with cash through the purchase of the mortgages." Appellants claim this is enough to make Nationsbank liable as a co-conspirator. While such an allegation may or may not form part of a valid claim of a conspiracy to defraud future GDC home buyers, it does not establish that Nationsbank was in any way involved in a conspiracy to defraud the appellants. The fraud and any conspiracy to defraud the appellants took place, if at all, at the time appellants purchased their homes and delivered their notes and mortgages to GDV.
We do, however, vacate that part of the trial court's order striking the allegations of the affirmative defenses that Nationsbank, by being aware of the GDC/GDV fraud at the time it acquired the note and mortgage, is not a holder in due course. The general allegations of paragraphs four through thirty-one of the complaint, which were incorporated in the affirmative defenses, asserted that GDC, GDV and various appraisers were involved in a fraudulent scheme to induce appellants to execute notes and mortgages. Further, it is alleged that Nationsbank was aware of that scheme when it later purchased the pool of notes and mortgages. Specifically the appellants alleged in part:
13. A non-conforming (fraudulent) appraisal was performed by an independent appraiser who was a co-conspirator with GDC and GDV Financial, to support the overpricing of the home. GDC and GDV Financial conspired with numerous such appraisers to misrepresent the value of the GDC homes such as that sold to the Defendants. The Defendants reasonably relied on this appraisal when they agreed to purchase the home.
* * * * * *
27. These lenders including ... [Nationsbank], were aware that the principal amount of any mortgages they purchased from GDV Financial, and particularly the mortgage on the Defendants' property, were based on the fraudulent GDC appraisals.
These allegations create an issue whether any of the appellants were defrauded and whether Nationsbank was a holder in due course who is immune from the fraud defense. Baraban v. Manatee Nat. Bank of Bradenton, 212 So.2d 341, 342 (Fla. 2d DCA 1968) ("to constitute the notice contemplated by § 674.54(4), it is necessary that the holder of the note have `actual' knowledge of the infirmity or knowledge of such facts that by taking the note, the holder acted in bad faith. Fla. Stat. § 674.58 (1965)"); Antonacci v. Denner, 149 So.2d 52 (Fla. 2d DCA), cert. denied, 155 So.2d 617 (Fla. 1963).
The appellants have alleged and should have the opportunity to prove that they relied on an intentionally deceptive appraisal when they purchased their houses from GDC and delivered their notes and mortgages to GDV. They were prevented from doing so at the hearing on Nationsbank's motion for summary judgment because the affirmative defenses had previously been stricken. If either of the appellants can demonstrate that they were defrauded by the acts of GDV in the purchase and original financing of their homes, the question of Nationsbank's knowledge at the time of its purchase of the pooled mortgages will become central to any holder in due course argument. The statutes prescribing rights of the respective parties to instruments contemplate that on occasion defenses by an obligor will be available against assignees of the obligee. §§ 673.302(1) & 673.307, Fla. Stat. (1991). Those statutes, however, do not place an obligation on a holder to advise a maker of possible defenses to enforcement nor do they categorize each act of accepting *1034 payment on the obligation as a wrongful act as appellants attempt to do.
We have not ignored the cases cited by Nationsbank for the proposition that an alleged misstatement of the value of the property itself, without more, will not sustain a cause of action for fraud. White v. Crandall, 105 Fla. 70, 143 So. 871, 877 (1932) (no "averment that at the time of the alleged representations by plaintiffs or their agents they knew the same to be false and were made for the purpose of deceiving defendant"); Sutton v. Gulf Life Ins. Co., 138 Fla. 692, 189 So. 828, 829 (1939) (to survive a motion to dismiss, the complaint must allege a misrepresentation of specific facts and a demonstrable "connection between [that] representation as made and the land value as affected by it.") The cases cited appear to be mere "puffing" cases in which salesmen described in glowing terms the attributes of the property being sold. Those cases are to be distinguished from the instant case where the appellants allege GDC and GDV conspired with appraisers to materially misrepresent the values of GDC homes, that GDC and GDV intended such false representations to induce appellants to buy their homes and execute the GDV notes and mortgages, and that appellants reasonably relied on these false appraisals when they purchased their homes and gave their notes and mortgages. Independent professional appraisals are commonly relied upon by sellers and purchasers in the marketplace to establish values for informed negotiations. An appraisal, while opinion, may support a claim of fraud where the appraisal is an expression of a false opinion. See Shee-Con, Inc. v. Al Seim Appraisal Service, Inc., 427 So.2d 311 (Fla. 5th DCA 1983).
We remand to the trial court for further proceedings with respect only to the issue whether either or both of the appellants were fraudulently induced to execute the specific note and mortgage which are the subject of each of their foreclosures and if so, whether Nationsbank ever attained the status of a holder in due course.[2]
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
W. SHARP and GOSHORN, JJ., concur.
NOTES
[1] Cummings v. State, 514 So.2d 406 (Fla. 4th DCA 1987); Nicholson v. Kellin, 481 So.2d 931 (Fla. 5th DCA 1985); and Donofrio v. Matassini, 503 So.2d 1278 (Fla. 2d DCA 1987).
[2] We acknowledge that appellant raised an additional issue regarding the fiduciary obligation of Nationsbank to the appellants who have never had any relationship with Nationsbank other than as described. We find no merit in the arguments presented on that issue.