707 So.2d 1153 (1998)
Julian NAJERA, et al., Appellants,
v.
NATIONSBANK TRUST COMPANY, N.A., etc., et al., Appellees.
No. 97-154.
District Court of Appeal of Florida, Fifth District.
February 20, 1998.
Rehearing Denied April 15, 1998.
*1154 Marsha L. Lyons and Douglas S. Lyons of Lyons and Farrar, P.A., Tallahassee, for Appellants.
Peter W. Homer, Jenifer Young Pfleger, and Blaine R. Young of Homer & Bonner, P.A., Miami, for Appellees.
W. SHARP, Judge.
Julian and Anita Najera appeal from a final summary judgment of foreclosure by NationsBank Trust Company. The defenses of fraud and misrepresentation raised by the Najeras in this record are similar to those in Roach v. Federal National Mortgage Corporation, 641 So.2d 186 (Fla. 5th DCA 1994) and James v. Nationsbank Trust Company (Fla. Nat. Ass'n), 639 So.2d 1031 (Fla. 5th DCA 1994). We think there are issues of material fact in the record, which should not have been disposed of by summary judgment, and accordingly, we reverse and remand for further proceedings.
In Roach, this court held that the case should proceed below, reversing a judgment on the pleadings on the issue of whether those appellants were fraudulently induced to sign a note and mortgage, and whether or not the bank was a holder in due course, relying on James. In James, this court held that the trial court erred in dismissing counterclaims and affirmative defenses as to the defense of fraud allegedly committed by General Development Corporation (GDC) and its subsidiary, GDV Financial Corporation (GDV). Those allegations are similar to the ones asserted in this case. Since the appellee failed to show no material issue of fact existed as to them, these issues are appropriate for trial.
In James, the appellants alleged a fraudulent sales scheme and the bank's later knowledge of it at the time it purchased the notes and mortgage, as an assignee, similar to the facts alleged in this case. As in that case, the bank did not counter these allegations in its summary motion documents. Thus the holder in due course issue is identical in both cases.
In his deposition, Julian Najera stated he requested but never was provided with a copy of the appraisal on the property. However, he alleged he asked to see it on numerous times and was told by GDC personnel that it would be taken care of by the bank, and "not to worry because no bank would loan out more money on a loan ... than the value of the property." It is not disputed that the appraisal was grossly inflated, so that the property was worth much less than the actual mortgage loan.
Julian also testified and alleged he asked GDC personnel how the property compared with local values, and was always given the same reply"no bank in its right mind is going to loan you money" that is not secured by the property. In his affidavit, Julian alleged he asked two GDC sales persons the appraised value of the property, before his appraisal was completed. They told him not to worry about it, that the bank would take care of making sure the appraisal was properly done. Julian paid a fee for the appraisal. He understood from these representations and prior experience that the appraisal was being done to verify the property would provide the lending institution with sufficient collateral for the loan, and it would not extend financing unless the loan was supported by the appraisal.
Other allegations in this case, which were not refuted by the summary judgment record, show these appellants relied on fraudulent sales practices engaged in by GDC and GDV, including:
1. Contact by GDC and misrepresentations made to them by GDV and GDC employees concerning the value of the lot they had previously purchased, assuring them it had appreciated in value when it had not, and offering them at a discount, a trade on a house;
2. Additional oral misrepresentations concerning the strength of the rental market and sales market for GDC properties; i.e., that the rental would cover the mortgage payments, which was false and known to be false when made;
3. Misrepresentations that GDV would provide `conventional mortgage loan financing' *1155 meaning to appellants (and to the commercial lending world in general) that there would be at least a 25% equity in the mortgaged property, supported by a competent professional appraisal. Although appellants did not see the appraisal, they relied on misrepresentations one would be furnished to support the values. These representations were false and known to be false when they were made, and they were the inducing reason appellants contracted for the trade;
4. At the closing, these same misrepresentations were repeated orally and on paper. The affidavit which GDC and GDV and appellants executed, asserted the inflated value of the house and the existence of the equity and loan-to-value ratio;
5. GDC held itself out to appellants as having expertise and professional knowledge concerning the local real estate market, being a very large land developer. This and other fraudulent land deals were offered to out-of-state buyers, such as appellants, who when they came to Florida, were carefully directed away from any independent real estate dealers or brokers.
The bank argued at summary judgment that since the Najeras never saw the appraisal, they could not have reasonably relied upon it. Thus, the bank argues that James is distinguishable. However, we think the allegations and record create issues of fact concerning whether the Najeras relied upon the existence of a professional appraisal to support the loan values, and whether they would have entered into this transaction had those representations not been made.
The bank also argued that there was nothing going on in this transaction other than the normal "puffing" of valuesa commonly acceptable practice by sellers of real estate. However, the allegations and record establish far more than the assertion of inflated values. GDC and GDV collectively misrepresented the value of the lot the Najeras already owned, the value of the condo for which they were induced to swap the lot, the fact that they were to have conventional financing (at least a 25% equity-to-loan ratio), that the rental market in the area was sufficiently strong to cover their mortgage payments, that the resale market for GDC properties was strong at the false sales prices, and that there existed and would be provided a professional appraisal to back up the value of the property provided to them, as part of the financing package. None of these facts was conclusively refuted by the bank, and thus for summary judgment purposes, must be taken as true. Watson v. Hahn, 664 So.2d 1083 (Fla. 5th DCA 1995); Mullan v. Bishop of the Diocese of Orlando, 540 So.2d 174 (Fla. 5th DCA 1989); Dubuis v. Security First Federal Savings & Loan Ass'n, 529 So.2d 1251 (Fla. 5th DCA 1988); Brooks v. Herndon Ambulance Service, Inc., 475 So.2d 1319 (Fla. 5th DCA 1985); Charron v. Coachmen Industries, Inc., 417 So.2d 1145 (Fla. 5th DCA 1982).
If this alleged course of fraudulent conduct on the part of GDC and GDV is established at trial, and if it is shown was reasonably relied upon by the Najeras, these proofs could provide them with a defense to this foreclosure action. Accordingly, we reverse the summary judgment and remand for further proceedings.
REVERSED and REMANDED.
THOMPSON, J., concurs.
DAUKSCH, J., dissents without opinion.