[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10143

_____

D.C. Docket No. 9:11-cv-80416-KLR

CORDELL CONSULTANT, INC. MONEY
PURCHASE PLAN AND TRUST,
a Virginia corporation,

Plaintiff-Appellant,

versus

ELIOT C. ABBOTT,
DALE S. BERGMAN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2014)

Before ANDERSON and GILMAN,* Circuit Judges, and JOHNSON,** District
Judge.

_____
*Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

**Honorable Inge Prytz Johnson, United States District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

We have had the benefit of oral argument in this case, and have very carefully considered the briefs of the parties and relevant parts of the record.  This case involves allegations that four lawyers, and through them their law firm, aided and abetted a client in fraudulently procuring a $7 million loan from plaintiff in April 2007.   Plaintiff also alleges that the same actions constitute a civil conspiracy.  The district court dismissed plaintiff's Second Amended Complaint ("SAC").  We conclude that this was error.

## I.

In the Fed. R. Civ. P. 12(b)(6) posture of this appeal, we assume that all well-pled factual allegations are true and draw all reasonable inferences in favor of the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1948 (2009).  Because the claims sound in fraud, Rule 9(b) requires that the circumstances of the fraud must be stated with particularity.  See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1064-65 (11th Cir. 2007).  However, allegations of knowledge and intent are not subject to the particularity requirement. Fed. R. Civ. P. 9(b).

## II.

2

We address first the claim that the four lawyers aided and abetted their client's scheme to induce plaintiff to make a $7 million loan based on misrepresentations. The elements of this claim under Florida law are as follows: (1) the existence of an underlying fraud; (2) the defendants' knowledge of the fraud; and (3) the defendants' provision of substantial assistance to advance the commission of the fraud. ZP No. 54 Ltd. P'ship v. Fid. & Dep. Co. of Md., 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005).

The first element – an underlying fraud – is sufficiently pleaded. The SAC also contains ample allegations that all four individual defendant-lawyers knew not only that their client was engaged in a Ponzi scheme, but also that he planned to defraud lenders by obtaining loans based on false financial statements in an effort to prevent the scheme from collapsing. More significantly, it is alleged that these defendants knew that the financial statement used to obtain the April 2007 loan – upon which they all intended plaintiff to rely in making the loan – was false.[1]

---

[1] For purposes of our decision, it is not crucial whether defendants actually assisted the client in preparing the financial statement, or whether they merely knew and intended for plaintiff to rely on a preexisting financial statement.

In light of our conclusion that the pleadings sufficiently allege that all four individual defendants knew of the misrepresentation with respect to the financial statement, furthermore, we need not address other misrepresentations alleged by plaintiff. However, if the allegations of the SAC are true, all four defendants had much more extensive knowledge than we describe here, which might include knowledge of other misrepresentations to this plaintiff with respect to the instant $7 million loan and with respect to at least one previous loan (in February 2007).

There were express allegations to that effect, and ample supporting allegations of fact. For example, the client allegedly made extensive disclosures to all four individual defendants, such that they knew that the client unlawfully withdrew funds from his qualified intermediary companies ("QIs") and used those funds to purchase properties in his personal name (or that of a controlled entity).[2] It is also alleged that all four individual defendants knew that the financial statement used to obtain the April 2007 loan falsely listed such properties as the client's own and vastly understated his liabilities.

We now turn to the third element – whether the four defendant-lawyers provided substantial assistance to advance the fraud against this plaintiff with respect to the April 2007, $7 million loan. In relation to this issue, the parties refer to two of the lawyers as "transactional lawyers" and two of the lawyers as "litigation lawyers." We will discuss each pair of lawyers in turn.

---

[2]    If the allegations of the SAC are true, all four individual defendants also had extensive knowledge of the client's practices. They had read previous legal opinions concluding that the client's withdrawals from the QIs and his use of those funds to buy properties in his personal name constituted at least violations of contractual and fiduciary duties, and very likely constituted fraudulent and criminal activity in the nature of a Ponzi scheme. Extensive research conducted by a member of defendants' own firm tended to corroborate these opinions. In short, the allegations provide plausible support for plaintiff's allegation that all four individual defendants knew that the client was conducting a criminal Ponzi scheme, unlawfully withdrawing funds from early QIs, and replacing them with funds unlawfully withdrawn from later QIs.

We readily conclude that there are ample, particularized allegations that the two "transactional lawyers" substantially assisted the April 2007 fraud on plaintiff. The two transactional lawyers allegedly prepared the loan documents for the $7 million loan, closed the loan, and delivered the loan documents to plaintiff, all the while knowing that the loan documents contained false statements.  They intended for the plaintiff to rely on a written financial statement that they allegedly knew falsely represented, as the client's own property, properties which the client had purchased with funds unlawfully withdrawn from the QIs.  They also allegedly knew that the financial statement vastly understated the client's liabilities.

We likewise conclude that there are sufficient, particularized allegations that the two "litigation lawyers" substantially assisted the fraud against this plaintiff. We note that the SAC alleges that the two litigation lawyers directed and supervised at least some of the actions taken by the two transactional lawyers in relation to the April 2007 loan.  We also note that the litigation lawyers were allegedly responsible for the client relationship and for billing the client.  We need not decide, however, whether the foregoing is sufficient to constitute the required substantial assistance because, in addition to the foregoing, it is alleged that the two litigation lawyers specifically advised the client to borrow the $7 million at issue from plaintiff.  This advice was given notwithstanding that the two litigation

5

lawyers allegedly had full knowledge of the client's Ponzi scheme and his intent to use the proceeds to continue and conceal the scheme.   More significantly, this advice was given notwithstanding the allegations that the two litigation lawyers knew that the client would obtain the loan based upon a false financial statement. We conclude that the foregoing constitutes sufficient, particularized allegations satisfying the substantial assistance requirement.

III.

Next, we address the plaintiff's civil-conspiracy claim.   The elements of the claim under Florida law are as follows:

> (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.

Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997).  "Each coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'"  Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1160 (Fla. Dist. Ct. App. 2008) (quoting Donofrio v. Matassini, 503 So. 2d 1278, 1281 (Fla. Dist. Ct. App. 1987)).

There is no doubt that obtaining a loan based upon false representations is unlawful.   The pleadings sufficiently allege that plaintiff was damaged as a result

6

of the alleged fraud.  Thus, we need address only the allegations relating to the requirements of an agreement and an overt act.

We conclude that there are sufficient, particularized allegations, with respect to all four defendant-lawyers, satisfying both the agreement element and the overt-act element.  There are specific allegations that the two litigation lawyers advised the client to obtain the $7 million loan from plaintiff, knowing that the client would use a false financial statement.  The client allegedly agreed and implemented the advice.  The client implemented the advice by joining with the two transactional lawyers, who were partners of the litigation lawyers, in preparing and jointly submitting knowingly false loan documents to plaintiff in order to induce the loan.  These allegations are both sufficiently particularized and also sufficient to support reasonable inferences of agreement and an overt act.

## IV.

For the foregoing reasons, and with respect to both the aiding-and-abetting-fraud claim and the civil-conspiracy claim, we conclude that the district court erred in dismissing plaintiff's claims against all four individual defendant-lawyers pursuant to Rule 12(b)(6).[3]  Because the defendant-law firm can be vicariously

---

[3]    We recognize that the four defendant-lawyers deny the allegations and vigorously deny both having aided and abetted the client's fraud and also having agreed with the client to do an unlawful act.  Obviously, we express no opinion on the ultimate outcome of this case.

7

liable if one or more of the individual defendants is ultimately found liable, <u>see</u> Fla. Stat. § 621.07, it was also error to dismiss the claims against the defendant-law firm. Accordingly the judgment of the district court is reversed[4] and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

[4]    Appellee's motion for attorney's fees is denied.