# Third District Court of Appeal
## State of Florida

Opinion filed April 27, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-0315 & 3D21-0454
Lower Tribunal No. 18-19966
_____

**Plastiquim, S.A., et al.,**
Appellants,

vs.

**Odebrecht Construction, Inc., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado LLP, Augusto R. Lopez, and Gustavo D. Lage, for appellants.

Clifford Chance US LLP, Glen Donath (Washington, DC), Benjamin A. Berringer (New York, NY), Nelson Mullins Broad and Cassel, and Beverly A. Pohl (Fort Lauderdale), for appellees Odebrecht Construction, Inc. and Odebrecht Global Sourcing, Inc., Coffey Burlington, P.L., and Jeffrey B. Crockett, Fernando A. Tamayo, and John E. Thornton, Jr., for appellee Carlos Polit.


Before SCALES, MILLER, and LOBREE, JJ.

MILLER, J.

Appellants, Plastiquim, S.A. and its principal, Mauricio Neme, challenge a final order dismissing their claims against appellees, Odebrecht Construction, Inc., Odebrecht Global Sourcing, Inc. (collectively the "Odebrecht Entities"), and Carlos Polit, on the grounds the operative complaint failed to state a cause of action. We affirm in part and reverse in part.

## BACKGROUND

This dispute traces its origins to the data breach of Panamanian law firm Mossack Fonseca, which led to the leak of the infamous "Panama Papers." Appellants contend that Odebrecht, S.A., the parent construction company of the Odebrecht Entities, recruited John Polit, the son of Carlos Polit, a then-prominent Ecuadorian politician, to persuade unwitting entities to borrow money from an alleged wealthy investor seeking to secure a reliable return. In actuality, no such investor existed. The loans were paid back to shell companies controlled by certain government actors that Odebrecht, S.A. bribed for favorable treatment, including Carlos Polit.

Appellants accepted one such loan. After the leak of the Panama Papers, they were both implicated in the ensuing criminal investigation. Certain assets were subject to an official freeze order, as a result of which

2

appellants purportedly incurred business losses. Attorney's fees and litigation-related expenses stemmed from the criminal investigation.

Odebrecht, S.A. was eventually federally indicted in New York for financial crimes and admitted to paying $788 million in bribes to various bureaucrats around the globe to secure government contracts, including in Ecuador, while Carlos Polit was charged and convicted in Ecuador for accepting over $7 million in bribes from Odebrecht, S.A. and the Odebrecht Entities.

## PROCEDURAL HISTORY

Appellants filed suit in the circuit court of Miami-Dade County against John Polit, Carlos Polit, Odebrecht, S.A., the Odebrecht Entities, and Constructora Norberto Odebrecht del Ecuador. As relevant to this appeal, the operative complaint alleged claims for fraud, civil conspiracy, and violations of the Florida Racketeering Influenced and Corrupt Organizations Act ("RICO"), as codified in section 772.101 et seq., Florida Statutes (2020), and the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), as codified in section 501.201 et. seq., Florida Statutes (2020). The claims

3

against Carlos Polit and the Odebrecht Entities were dismissed with prejudice, and the instant appeals ensued.[1]

**ANALYSIS**

When considering a motion to dismiss, the trial court "must look only to the four corners of the complaint including the attachments; and the allegations contained therein should be taken as true without regard to the pleader's ability to prove them." Coriat v. Glob. Assurance Grp., Inc., 862 So. 2d 743, 743 (Fla. 3d DCA 2003). Correspondingly, on appeal, we review de novo "whether the complaint alleges sufficient ultimate facts, which under any theory of law, would entitle a plaintiff to the relief sought." Cohen v. Am. Home Assurance Co., 367 So. 2d 677, 681 (Fla. 3d DCA 1979).

In order to state a viable cause of action for fraud, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985). Due to the proclivity of litigants to "loosely sling the term 'fraud' into pleadings," Florida law requires that the tortious conduct be

---

[1] We have sua sponte consolidated appellants' separate appeals for purposes of this opinion.

4

described with precision. Thompson v. Bank of N.Y., 862 So. 2d 768, 770 (Fla. 4th DCA 2003). To fulfil this mandate, Florida Rule of Civil Procedure 1.120(b) necessitates "the circumstances constituting fraud . . . be stated with such particularity as the circumstances may permit." In this vein, the claim "must clearly and concisely set out the essential facts of the fraud, and not just legal conclusions." Flemenbaum v. Flemenbaum, 636 So. 2d 579, 580 (Fla. 4th DCA 1994).

Similarly, a claim for civil conspiracy must allege: (1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts. Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). In pleading conspiracy, the plaintiff must further identify an actionable underlying tort or wrong. Id.

Distilled to its essence, the complaint in the instant case alleged fraud on the theory that John Polit, acting as an agent for Odebrecht, S.A. and the Odebrecht Entities, knowingly misrepresented the source of the loan in order to induce appellants to borrow funds and facilitate a sophisticated money laundering operation. After the loan transaction was completed, John Polit used the corporate cloak of Odebrecht and its associated shell entities as a subterfuge to disguise the source of the monies tendered to Carlos Polit and

5

other corrupt politicians to secure illegal favors.  When this arrangement was exposed after the leak of the Panama Papers, appellants were targeted by investigating authorities and consequently suffered damages in the form of litigation-related expenses, unpaid interest, and business losses.

Appellees devote a considerable portion of their briefs to the implausibility of the allegations and the failure to conclusively demonstrate an agency relationship between the Odebrecht Entities and the remaining parties.  It is axiomatic that "[a] motion to dismiss concedes for the purposes of the motion the truth of the well-pled allegations of the complaint." Lieberman v. City of Miami Beach, 147 So. 2d 16, 17 (Fla. 3d DCA 1962). Equally well-established is the principle that "[t]he existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial."  Orlando Exec. Park, Inc. v. Robbins, 433 So. 2d 491, 494 (Fla. 1983).  Accordingly, we conclude the complaint stated with sufficient particularity facts supporting the essential elements of fraud. See also Ward v. Atl. Sec. Bank, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001) (concluding fraud may be predicated on an intentional omission of a material fact).

In pleading civil conspiracy, appellants advanced similar allegations with the added contention that appellees, acting in concert with the other

defendants, orchestrated the master plan to bribe the officials and conceal the illegal act by laundering unlawful payments. In this regard, appellants were alleged to be but pawns in a far-reaching scheme. Because "[e]ach coconspirator need not act to further a conspiracy[,] each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his [or her] coconspirators,'" and, here, appellants sufficiently alleged all conspirators engaged in a common scheme of fraud, while individual conspirators committed overt acts, we conclude the complaint further stated a viable claim for conspiracy. Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (quoting Donofrio v. Matassini, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)).

We conclude, however, that because neither the RICO count nor the FDUTPA count were facially sufficient, the trial court properly dismissed those claims. See O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); § 772.103(1), Fla. Stat.; § 772.102(4), Fla. Stat.; § 95.11(3)(f), Fla. Stat. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent herewith.

Affirmed in part, reversed in part, and remanded for further proceedings.